NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0123n.06

**Case No. 14-3429**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARIO DIAZ-HERNANDEZ, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| *Respondent*. | ) | |
| | ) | O P I N I O N |
| | ) | |

BEFORE:    COLE, Chief Judge; MOORE and CLAY, Circuit Judges.

COLE, Chief Judge.   Mario Diaz-Hernandez petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA").  He challenges the BIA's denial of his application for both withholding of removal and protection under the Convention Against Torture ("CAT").  For the following reasons, we deny the petition for review.

**I. BACKGROUND**

In 1999, Mario Diaz-Hernandez, a native and citizen of Mexico, entered the United States illegally without admission or inspection.  On August 6, 2010, he filed an application for asylum, alleging he was filing over one year after his arrival "due to [a] current change in [his] country's conditions."  His application was denied, and he was placed in removal proceedings.

On September 21, 2010, the Department of Homeland Security ("DHS") filed a Notice to Appear, charging Diaz-Hernandez with inadmissibility as an alien who had been neither paroled nor admitted. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Diaz-Hernandez appeared before an immigration judge ("IJ") on October 19, 2010 and admitted his removability. He renewed his application for asylum, requesting to amend his application. On November 2, 2010, Diaz-Hernandez resubmitted his asylum request along with a request for withholding of removal and protection under the CAT.

On February 13, 2012, the IJ held a merits hearing. At the hearing, Diaz-Hernandez testified that he fears the gangs in Mexico that would persecute him if he returned because he is a *nortero*. He defined *norteros* as a group of Mexicans who worked in the United States and returned to Mexico. He testified that gangs target *norteros* because they are perceived as wealthy.

During his time in the United States, Diaz-Hernandez said he made up to $1,200 per week and that he has approximately $9,000 in savings from his painting business. If he returned to Mexico, Diaz-Hernandez estimated he would make $10 per day. He said that the police in Mexico would not protect him from the predatory gang members because the police are corrupt and "don't look out for simple people [like him]."

He further testified that he fears harm upon return to Mexico because his brother, Vicente, was robbed and beaten in 2010 in Mexico. Diaz-Hernandez said that Vicente had filed a police report, but the police did not investigate further because Vicente was relatively unharmed after the incident. Diaz-Hernandez did not identify the assailants or their affiliation. He acknowledged that Vicente had never traveled to the United States to work. In addition to his

testimony, Diaz-Hernandez submitted to the IJ a letter from Vicente and various newspaper articles reporting various incidents of general crime and violence in Mexico.

On February 13, 2012, the IJ issued an oral decision. While the IJ found Diaz-Hernandez credible, the IJ ultimately denied his application for asylum, withholding of removal, and protection under the CAT. The IJ determined that Diaz-Hernandez was ineligible for asylum because he failed to file his application in a timely manner. The IJ found Diaz-Hernandez ineligible for withholding of removal because *norteros* did not qualify as a social group under the INA. Finally, the IJ denied Diaz-Hernandez's CAT claim because he did not demonstrate that the Mexican government is "acquiescing or turning a willful blind eye to the issues of torture." However, the IJ did grant Diaz-Hernandez the opportunity to depart voluntarily.

Diaz-Hernandez appealed the IJ's decision finding him ineligible for withholding of removal and protection under the CAT. On April 1, 2014, the BIA affirmed the decision of the IJ, finding that Diaz-Hernandez's "fear of persecution based on perceived wealth [did] not constitute a particular social group." The BIA also found Diaz-Hernandez ineligible for protection under the CAT because he did not demonstrate he was "more likely than not [to] be tortured in Mexico by or with the acquiescence of a public official or other person acting in an official capacity." The BIA declined to reinstate the IJ's grant of voluntary departure because Diaz-Hernandez did not submit timely proof that he paid the necessary voluntary departure bond.

Diaz-Hernandez petitions this court to overturn the decision of the BIA on his application for withholding of removal and protection under the CAT.

## II. ANALYSIS

### A. Standard of Review

If the BIA reviews the IJ's decision and issues a separate opinion, we generally review the BIA's decision as the final agency decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). However, if, as here, the BIA adopts the IJ's reasoning, we review the IJ's decision as well. *Id.* This court reviews questions of law de novo and factual findings under the substantial evidence standard. *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014).

### B. Merits

#### 1. Withholding of Removal

Diaz-Hernandez argues that the BIA erred by finding that he was ineligible for withholding of removal because he was not part of a particular social group. An alien seeking withholding of removal must demonstrate a "clear probability" that if he were removed to his native country he would be persecuted because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010). A clear probability means that it is "more likely than not" that an alien would be subject to persecution. *INS v. Stevic*, 467 U.S. 407, 429–30 (1984). Failure to establish the requisite nexus between the harm alleged or feared and a protected social group is fatal to the applicant's request for withholding of removal. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010).

Diaz-Hernandez defines his social group, the *norteros*, as people who are perceived as wealthy because they worked in the United States and returned to Mexico. We have consistently held that those who are perceived as wealthy do not constitute a particular social group. *Reyes-Cardona v. Holder*, 565 F. App'x 366 (6th Cir. 2014) (holding former inhabitants of the United

States perceived as wealthy did not constitute a social group); *Cano-Huerta v. Holder*, 568 F. App'x 371 (6th Cir. 2014) (same); *Palokaj v. Holder*, 510 F. App'x 464 (6th Cir. 2013) (holding that perceived wealth is not a social group). In light of these decisions, Diaz-Hernandez has not shown that he is part of a cognizable social group under the INA, and therefore, he is ineligible for withholding of removal.

Even if he were able to demonstrate he was part of a recognized social group, Diaz-Hernandez has not established the required nexus between the harm feared and his social group, the *norteros*. In support of his application for withholding of removal, Diaz-Hernandez testified about the robbery of his brother, Vicente. However, Diaz-Hernandez never connected the incident to his petition. He never identified the assailants or their affiliation. Most importantly, Diaz-Hernandez conceded that his brother had never traveled to the United States, so the robbery could not have been a result of his status as a *nortero*. Moreover, while the articles submitted by Diaz-Hernandez demonstrate general incidents of violence in Mexico, they do not show a connection to the *norteros*.

*2. Protection Under the CAT*

Diaz-Hernandez also argues that the BIA erred by finding him ineligible for protection under the CAT. An alien seeking protection under the CAT must prove that it is more likely than not that he would be tortured by or with the acquiescence of the government if returned to the proposed country of removal. *See* 8 C.F.R. § 1208.18(a)(1); *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). Here, Diaz-Hernandez failed to show the requisite level of government involvement for protection under the CAT. While there is evidence of individual instances of government corruption, there is no evidence of systemic involvement of the government in

torture that would make it more likely than not that Diaz-Hernandez himself would be subject to

torture. Accordingly, Diaz-Hernandez is ineligible for protection under the CAT.

### III. CONCLUSION

For the foregoing reasons, we deny the petition.