NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0690n.06

No. 17-3332

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VICTOR MANUEL BLANCO-SANTA MARIA, | ) ) ) | **FILED** Dec 14, 2017 DEBORAH S. HUNT, Clerk |
| Petitioner, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES |
| v. | ) ) | BOARD OF IMMIGRATION APPEALS |
| JEFFERSON B. SESSIONS, III, U.S. Attorney General, | ) ) ) | |
| Respondent. | ) | |

BEFORE: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

PER CURIAM. Victor Manuel Blanco-Santa Maria, a native and citizen of El Salvador, petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the denial of his asylum application. For the reasons set forth below, we deny the petition for review.

Blanco-Santa Maria entered the United States near Progreso, Texas, on April 7, 2014, when he was seventeen years old. (AR 665). The Department of Homeland Security took Blanco-Santa Maria into custody and served him with a notice to appear in removal proceedings, charging him with removability as an alien present in the United States without being admitted or paroled. (AR 665-67). *See* 8 U.S.C. § 1182(a)(6)(A)(i). Blanco-Santa Maria appeared before an immigration judge (IJ) and conceded removability as charged. (AR 154). The IJ continued the proceedings to allow Blanco-Santa Maria, an unaccompanied alien child, to file an asylum application with the United States Citizenship and Immigration Services (USCIS). (AR 154-56).

*See* 8 U.S.C. § 1158(b)(3)(C). Following an interview with an asylum officer (AR 231-35), the USCIS determined that Blanco-Santa Maria did not meet the requirements for asylum and returned his case to the IJ. (AR 577-78).

Blanco-Santa Maria subsequently submitted an amended application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) on the basis that gang members in El Salvador mistreated him because of his political opinion and membership in a particular social group. (AR 410-21). At the hearing on his application, Blanco-Santa Maria defined his particular social group as "young male El Salvadoran students who wish to pursue professional careers[,] oppose gang practices[,] believe in the rule of law[,] . . . [a]nd oppose crime and violence." (AR 170, 617). As for his political opinion, Blanco-Santa Maria described himself as an "anti-gang dissident abiding by law and opposing crime and violence." (AR 170).

Blanco-Santa Maria testified that a member of the Mara Salvatrucha (MS) gang first approached him when he was in ninth grade in Morazan. (AR 181). The gang member followed Blanco-Santa Maria as he walked home from school and asked him to join the gang. (AR 182). When Blanco-Santa Maria said that he did not want to be a part of the gang, the gang member became angry. (AR 182). The same gang member approached Blanco-Santa Maria three or four more times about joining the gang and, when Blanco-Santa Maria refused, told him that they were going to kill him if he did not join. (AR 182-83). Blanco-Santa Maria testified that he moved to San Miguel because the gang member was bothering him. (AR 187). In San Miguel, Blanco-Santa Maria initially took a private bus to school but later took a public bus. (AR 188-89). Members of the MS gang hijacked the bus and demanded money and telephones from all the passengers, and Blanco-Santa Maria complied. (AR 189-90). The gang members hijacked

the bus again the following week and became angry when Blanco-Santa Maria said that he did not have anything. (AR 190-91). The gang members asked Blanco-Santa Maria to join the gang and, upon his refusal, demanded $1000 in fifteen days. (AR 191-92). When Blanco-Santa Maria did not pay the money, the gang members became angry and threatened to hit him. (AR 192). Blanco-Santa Maria subsequently attended a birthday party and decided to leave because he saw members of the MS gang there. (AR 193). When Blanco-Santa Maria and his friend left the party, the gang members followed them and hit Blanco-Santa Maria because he had not joined the gang or paid them money. (AR 193-94). Blanco-Santa Maria's nose and arm were bleeding, and his arm was broken with his bone exposed outside his skin. (AR 195). Blanco-Santa Maria woke up in the hospital, where he stayed for a week and had three surgeries to repair his broken wrist. (AR 195-96). Blanco-Santa Maria testified that, after he left the hospital, he did not leave his house because he was afraid of the gang members. (AR 198-99). After about four months, Blanco-Santa Maria decided to go to the United States because the gang members would find him in El Salvador and he had no other place to go. (AR 199). According to Blanco-Santa Maria, members of the MS gang would kill him if he ever saw them again. (AR 200).

After the hearing, the IJ denied Blanco-Santa Maria's application for asylum, withholding of removal, and CAT protection and ordered his removal to El Salvador. (AR 127-45). The IJ found that Blanco-Santa Maria was a credible witness overall and had sufficiently corroborated his claims. (AR 138-41). The IJ went on to determine that Blanco-Santa Maria's proposed social group lacked social distinction and therefore was not cognizable for asylum purposes. (AR 141-42). As for Blanco-Santa Maria's claim based on political opinion, the IJ determined that he had failed to show that "his refusal to join the gang or his open opposition to violence constitutes being politically active or making anti-gang political statements." (AR 143).

Concluding that he had failed to demonstrate that he had suffered past persecution or has a well-founded fear of future persecution on account of a protected ground, the IJ denied Blanco-Santa Maria's asylum application. (AR 144). The IJ further determined that Blanco-Santa Maria had necessarily failed to satisfy the higher burden of proof for withholding of removal and had failed to demonstrate fear of torture at the hands of the Salvadoran government or with its acquiescence to support his application for CAT protection. (AR 144-45).

Blanco-Santa Maria appealed the IJ's decision to the BIA. (AR 95-98). Dismissing the appeal, the BIA concluded that Blanco-Santa Maria had failed to establish a nexus between his political opinion and fear of persecution, that his proposed social group lacked social distinction, and that he had failed to meet his burden of proof for CAT protection. (AR 2-3).

This timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual determinations for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Dieng v. Holder*, 698 F.3d 866, 871-72 (6th Cir. 2012).

Blanco-Santa Maria challenges the denial of his asylum application. Blanco-Santa Maria has expressly waived his claim for CAT protection and has also waived his claim for withholding of removal by failing to address that claim in his brief. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005). "An alien who seeks asylum must establish that [he] meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to [his] home country because of past persecution or a 'well-founded fear' of future persecution 'on

account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). In support of his asylum claim, Blanco-Santa Maria asserted that he suffered past persecution in El Salvador and has a well-founded fear of future persecution on account of his particular social group and political opinion.

The BIA agreed with the IJ that Blanco-Santa Maria's proposed social group—"young, male Salvadoran students who wish to pursue professional careers, expressly oppose gang practices, believe in the rule of law, and oppose crime and violence" (AR 34)—lacked social distinction. To constitute a particular social group, the proposed group must be socially distinct—"that is, members of the group 'must be perceived as a group by society.'" *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 240 (BIA 2014)).

Blanco-Santa Maria acknowledges that this court has held that "young Salvadorans who have refused recruitment by the MS gang do not form a cognizable particular social group." *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (citations omitted). In an attempt to distinguish his proposed social group, Blanco-Santa Maria asserts that his proposed group is narrowed to students and that the school uniform makes students distinct in Salvadoran society, allowing the MS gang to target its recruiting. Blanco-Santa Maria cites the affidavit of an expert on the treatment of children in El Salvador, which states that "youth known to excel at school are targeted for forced recruitment so that the youth can help the gang manage its finances." (AR 325). But the expert's affidavit also states that the gangs in El Salvador engage in "widespread forced recruitment of children," indicating that the gangs do not limit their recruitment to children who attend particular schools or pursue certain courses of study.

(AR 325). Blanco-Santa Maria has cited no other evidence that his proposed social group "is perceived as a distinct segment of the Salvadoran population." *Umana-Ramos*, 724 F.3d at 674. The record does not compel a conclusion contrary to the determination that Blanco-Santa Maria's proposed social group lacked social distinction.

With respect to political opinion, the IJ determined both that Blanco-Santa Maria had failed to establish that "he would be viewed by others, including the feared persecutors, as holding an actual or imputed political opinion," and that he "did not suffer past persecution and [did] not have a well-founded fear of future persecution on account of his political opinion." (AR 143) The BIA agreed, finding that "there is no clear error in the Immigration Judge's determination that [Blanco-Santa Maria] has not established that a central reason for his mistreatment was on account of his actual or imputed political opinion." (AR 2). The record does not compel a contrary conclusion.

Blanco-Santa Maria has failed to demonstrate that he was persecuted on account of his political opinion. "[R]efusal to join MS, without more, does not constitute a 'political opinion.'" *Matter of E-A-G-*, 24 I. & N. Dec. 591, 596 (BIA 2008); *see Matter of S-E-G-*, 24 I. & N. Dec. 579, 588–89 (BIA 2008) (finding that respondents' argument that they were persecuted on account of their anti-gang political opinion was foreclosed by *I.N.S v. Elias-Zacarias*, 502 U.S. 478, 482 (1992)). "[I]t is not enough for the alien to demonstrate that his acts manifested a political opinion; the alien must also demonstrate that the persecutor's motive to persecute arose from the alien's political beliefs." *Khakhnelidze v. Holder*, 432 F. App'x 564, 571 (6th Cir. 2011) (citations omitted). As the IJ found, even though Blanco-Santa Maria told gang members that he opposed violent groups, he failed to present evidence that he would be viewed by his persecutors as holding an actual or imputed political opinion. (AR 143) "'[S]imply

demonstrating resistance to pressure to engage in certain acts and consequent retaliation for this resistance is insufficient' to satisfy the alien's burden." *Id.* (quoting *Matter of N–M–,* 25 I. & N. Dec. 526 (BIA 2011)).

For these reasons, we **DENY** Blanco-Santa Maria's petition for review.