**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0242n.06**

**No. 17-3777**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 15, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JONATHAN JIMMY VANEGAS TORRES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |

BEFORE: GIBBONS, BUSH, and LARSEN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Jonathan Jimmy Vanegas Torres, a thirty-four-year-old native and citizen of Mexico, sought asylum and withholding of removal under both the Immigration and Nationality Act ("INA") and the Convention Against Torture. He claims eligibility for these protections against deportation based on a likelihood of his being tortured upon his return to Mexico or persecuted by the Knights Templar, a Mexican gang, because of his membership in a particular social group. But he defines his proposed group only by its suffering persecution at the hands of the Knights Templar based on circumstances similar to his own. This definition is impermissibly circular and lacks social distinction. So his asylum and INA withholding applications fail. And because he offers insufficient evidence of his likely torture in Mexico with the government's acquiescence, his application for protection under the Convention Against Torture fails as well. We therefore deny his petition for review.

**I**

Vanegas Torres claims that he was apprehended by the Knights Templar in March 2015. They drove him around in a van, roughed him up, and demanded 50,000 pesos from him with a 10-day deadline. They threatened to kill him and his family if he did not pay. So Vanegas Torres trekked north to the border and presented himself to authorities there. This was a familiar endeavor to Vanegas Torres: he previously had entered or attempted to enter the United States illegally on eight occasions since January 2003.

He appeared before an immigration judge in December 2016. He argued that he faced persecution because of his membership in a particular social group: "Mexican nationals who were kidnapped and beaten by Knights Templar Cartel who will be targeted for violence by Knights Templar because they fled Mexico because they were unable to meet extortion demands." The judge first found that Vanegas Torres's testimony was inconsistent with documentary evidence and thus was not credible. The judge also found that the testimony of Vanegas Torres's wife relied only on assertions by Vanegas Torres, so it too was not credible. At any rate, the judge then held that the definition of Vanegas Torres's alleged particular social group was impermissibly circular and found that the group lacked social distinction. So the judge found that Vanegas Torres had failed to prove eligibility for asylum or withholding of removal under the INA. The judge also found that Vanegas Torres had failed to establish his likely torture with the acquiescence of the Mexican government. The judge then denied Vanegas Torres's applications for relief.

On appeal, the Board of Immigration Appeals ("BIA") denied relief for reasons similar to those given by the immigration judge: a circularly defined particular social group, a failure to establish the social distinction of that group, and insufficient evidence to show his likely torture

2

with the Mexican government's acquiescence. We agree with the BIA. Vanegas Torres's alleged particular social group is circularly defined. It also lacks social distinction. These combine to doom his applications for both asylum and withholding of removal under the INA. He also fails to meet the Convention Against Torture's stringent requirement of government acquiescence in his alleged likely torture in Mexico. We therefore deny his petition for review.

**II**

The BIA issued an independent decision on Vanegas Torres's asylum and withholding of removal applications. So we review only its decision on these issues and not the decision of the immigration judge. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497 (6th Cir. 2015). Legal conclusions are reviewed de novo, and we review any "factual findings and credibility determinations for substantial evidence." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citation omitted). The substantial-evidence standard is highly deferential; the BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). We may not reverse simply because we "would have decided the case differently." *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). Instead, reversal is appropriate only if the evidence compels a contrary conclusion. *Id.*

Applications for asylum and withholding of removal under the INA face similar requirements. For asylum, an alien must show that he is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a); *see Koliada v. INS*, 259 F.3d 482, 486–87 (6th Cir. 2001). A refugee is someone "who is unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *Rreshpja v. Gonzales*,

420 F.3d 551, 554 (6th Cir. 2005). Similarly, for withholding of removal under the INA, an alien must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 1208.16(b).

Vanegas Torres bases his applications for both asylum and withholding of removal under the INA on his alleged membership in a particular social group. So if he cannot establish a sufficient proposed particular social group, his claims for asylum and withholding of removal fail. *See, e.g.*, *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011). No statute defines the phrase "membership in a particular social group." *Id.* But several BIA decisions and our own precedents have clarified the relevant requirements.

A proposed social group must share a "common, immutable characteristic." *Zaldana Menijar*, 812 F.3d at 498 (quoting *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010)). It also must satisfy a "particularity" requirement. *Id.* This means that "the group can be described in terms sufficiently distinct such that the community would recognize it as a discrete class of persons." *Id.* (citation omitted). And the proposed group must be "socially distinct"; that is, the members "must be perceived as a group by society." *Id.* (citation omitted). Finally, in attempting to meet these requirements, a petitioner cannot propose a social group that is "circularly defined by the fact that it suffers persecution. . . . [T]he individuals in the group must share a narrowing characteristic other than their risk of being persecuted." *Kante*, 634 F.3d at 327.

Vanegas Torres defines his group as "Mexican Nationals who were kidnapped and beaten by Knights Templar Cartel who will be targeted for violence by Knights Templar because they fled Mexico because they were unable to meet extortion demands." But this is circular: the

group is essentially defined only by its persecution. The past persecution that Vanegas Torres references is his abduction, beating, and extortion. And the future persecution Vanegas Torres fears results from that same persecution. His proposed group shares no other characteristic. In *Kante*, we rejected as circular a proposed group of "women subjected to rape as a method of government control." 634 F.3d at 326–27. And in *Rreshpja*, we rejected as circular a proposed group of "attractive Albanian women who are forced into prostitution." 420 F.3d at 555. Similarly, here, Vanegas Torres's group of Mexican nationals, defined by no common characteristic other than previous and anticipated future persecution by the Knights Templar, is defined circularly. *Kante*, 634 F.3d at 327.

The additional element of fleeing the alleged persecution does not cure its circularity. The petitioners in *Kante* and *Rreshpja* also fled to the United States because of their alleged persecution. *Kante*, 634 F.3d at 323 (fleeing Guinea); *Rreshpja*, 420 F.3d at 553 (fleeing Albania). But we still denied their petitions for review. *Kante*, 634 F.3d at 327; *Rreshpja*, 420 F.3d at 559. Fleeing persecution is not a sufficiently narrowing characteristic to preclude a group from being defined only by its persecution. It is inherent in every application for asylum or withholding of removal under the INA that the applicant is fleeing persecution. *See* 8 U.S.C. § 1101(a)(42)(A) (defining a refugee as someone unable or unwilling to return to his home country "because of persecution"); 8 U.S.C. § 1231(b)(3)(A) (requiring an application for withholding of removal under the INA to show "that his life or freedom would be threatened" if he were removed to his country). So we agree with the BIA that the definition of Vanegas Torres's proposed particular social group is impermissibly circular.

We also uphold the BIA's decision based on substantial evidence that Vanegas Torres's proposed social group was not "socially distinct." *Zaldana Menijar*, 812 F.3d at 499–500. In light of our precedent and the record before us, the BIA's ruling must stand.

In *Zaldana Menijar*, we upheld the BIA's decision that the petitioner's proposed group lacked social distinction when he defined it as "active and long-term former gang members" or "El Salvadoran male youth, who were forced to actively participate in violent gang activities for the majority of their youth and who refused to comply with demands to show their loyalty through increasing violence." *Id.* at 498–99. And in *Munoz-Cano v. Sessions*, we again upheld the BIA's determination that "men who were involved with a gang who left the gang without permission" lacked social distinction to establish a particular social group. 690 F. App'x 407, 410 (6th Cir. 2017). *See also Blanco-Santa Maria v. Sessions*, 707 F. App'x 384, 387–88 (6th Cir. 2017) (upholding BIA's determination that a proposed group of "young, male Salvadoran students who wish to pursue professional careers, expressly oppose gang practices, believe in the rule of law, and oppose crime and violence" lacked social distinction).

Similarly, Vanegas Torres proposes a group that was persecuted by a gang and faces further persecution from refusing to comply with that gang's demands. As in *Zaldana Menijar* and *Munoz-Cano*, here the evidence fails to establish that the petitioner's group is "perceived as a group by society." *Zaldana Menijar*, 812 F.3d at 498; *accord Munoz-Cano*, 690 F. App'x at 410. Vanegas Torres's evidence shows the tragic fact that gang violence is all too prevalent in Mexican society. But this sadly cuts against him, because it increases the difficulty of showing the social distinction of a proposed group that will suffer from gang violence. *See Zaldana Menijar*, 812 F.3d at 499 ("Though the documentary evidence in the record does establish El Salvador as one of the most dangerous countries in the world, nothing in the record shows

6

Salvadorans as viewing [petitioner's proposed group of those forced into gang violence who refused to comply with gang demands] as socially distinct within their society."); *Munoz-Cano*, 690 F. App'x at 410 (explaining that although petitioner had shown that the country of removal was "a dangerous country with prevalent gang activity," he could not establish the social distinction of his proposed group of men involved with a gang). That Vanegas Torres might suffer from generalized gang violence, without more, is insufficient to establish a particular social group. *See Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) ("[Petitioner] has not established that he is more likely than other citizens in [the country of removal] to be subject to the violence of the country's criminal gangs.").

Vanegas Torres must establish his membership in a particular social group. The BIA held that he failed to so do. And the record does not compel us to reverse that decision. All that remains, then, is the Convention Against Torture.

For protection under the Convention, Vanegas Torres must show "that it is more likely than not that he . . . would be tortured if removed to [Mexico]." *See* 8 C.F.R. § 1208.16(c)(2); *Zaldana Menijar*, 812 F.3d at 501. Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). To establish acquiescence, regulations require "that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). We have held that acquiescence includes "willful blindness" to the torture by the government. *Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006).

7

The BIA found that Vanegas Torres's evidence did not support an application under the Convention Against Torture. In so doing, it found no clear error in the immigration judge's factual findings related to Vanegas Torres's application under the Convention Against Torture. So we review both the BIA's and the immigration judge's decisions on Vanegas Torres's application. *See Umana-Ramos*, 724 F.3d at 670 (explaining that we also review the immigration judge's decision "[t]o the extent the BIA adopted the immigration judge's reasoning"). And we review their findings of fact for substantial evidence. *Id.* We will therefore uphold the factual findings of the BIA and the immigration judge if they are based on "reasonable, substantial, and probative evidence" after considering the whole record. *See Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017). Even if, initially, we would have made a factual finding differently, we may not reverse unless we are "compelled to conclude to the contrary" of the BIA or immigration judge. 8 U.S.C. § 1252(b)(4)(B); *see Kamar v. Sessions*, 875 F.3d at 817 ("We apply the same standard of review for withholding of removal claims made under the Immigration and Nationality Act and for requests for protection under the Convention Against Torture."); *Zhao*, 569 F.3d at 247; *Chege v. Lynch*, 636 F. App'x 682, 685 (6th Cir. 2016).

Relative to the issues of asylum and withholding of removal under the INA, Vanegas Torres gives cursory attention to the Convention Against Torture in his papers. He argues that "he fears harm that would constitute torture through either instigation or acquiescence of the Mexican government if he is returned to Mexico." And he contends that he proved that "the Mexican government cannot or will not protect him from the cartels." He also argues that his evidence shows "widespread police corruption in Mexico" and that "the Mexican government is corrupt and unable to control the criminal organizations that threaten and harm members of [his] particular social group." Although reports of potential police corruption and violence by cartels

are concerning, upon reviewing the record as a whole, we are not compelled to reverse the decisions of the BIA and the immigration judge on Vanegas Torres's application for relief under the Convention Against Torture.

In *Zaldana Menijar*, we reasoned that the government's efforts to reduce police corruption undercut arguments of its acquiescing in any torture flowing from that corruption. 812 F.3d at 502. And in *Cristobal-Leon v. Holder*, we declined to reverse a finding that the government there was not acquiescing in gang violence when the government "ha[d] consistently opposed and fought gang warfare." 510 F. App'x 397, 400 (6th Cir. 2013). Furthermore, the inability of a government to control the alleged perpetrators of torture or successfully eliminate the torture is not alone conclusive of that government's acquiescence. *See Zaldana Menijar*, 812 F.3d at 502 ("That the Salvadoran government is unable to control the gangs does not constitute acquiescence."); *Perez-Morales v. Holder*, 448 F. App'x 585, 589 (6th Cir. 2011) (observing that "difficulty in curbing gang violence is hardly commensurate with tacit consent or willful blindness to that violence"). And a fear of crime in general is insufficient "to establish eligibility for withholding of removal under the [Convention Against Torture]." *See Palma-Campos v. Holder*, 606 F. App'x 284, 287 (6th Cir. 2015). Here, the record contains evidence of the Mexican government's attempts to combat both police corruption and gang violence. The proof is enough for the immigration judge and BIA to have found that, at most, Vanegas Torres's alleged fear is of generalized crime and violence, which is insufficient under the Convention.

There is evidence in the record that the Mexican government is not willfully turning a blind eye to the potential of police corruption. The evidence before the immigration judge explained that federal police are required to undergo vetting upon their initial application to the force and repeat that vetting every two years and that corrupt police have been prosecuted and

sentenced accordingly. Further, the record evidence established that the Mexican government also has deployed thousands of police and soldiers to combat the Knights Templar and that a recent offensive by the government led to the arrest of several gang leaders, reducing the Knights Templar's power. In light of this record evidence, there was substantial evidence to support the conclusions of the immigration judge and the BIA that the Mexican government does not acquiesce in any alleged torture, even if the government has struggled to successfully combat the Knights Templar and police corruption. *See Zaldana Menijar*, 812 F.3d at 502; *Cristobal-Leon*, 510 F. App'x at 400; *Perez-Morales*, 448 F. App'x at 589.

The closest that Vanegas Torres gets to showing any acquiescence by the government in the Knights Templar's actions is his wife's testimony that she believed that their former hometown mayor was a member of the Knights Templar. As proof, she explained that her cousin was kidnapped when her cousin's father contributed money to the mayor's campaign and then asked for a position in the mayor's administration or for his money back.[1] But the immigration judge and BIA were entitled to conclude that her belief, without any other collaboration, was insufficient to establish that Vanegas Torres's former mayor was a member of the Knights Templar. They also could have deemed the testimony irrelevant, as Vanegas Torres's wife admitted that the mayor she believed was a gang member is no longer the mayor. So there was a sufficient basis in the record to conclude that the former mayor's alleged connection to the Knights Templar, even assuming it existed, did not demonstrate that the government would acquiesce in any potential future torturous acts against Vanegas Torres by the Knights Templar. *Cf. Palma-Campos*, 606 F. App'x at 287 ("[Petitioner] did not point to any evidence of a particular threat of torture to him if he were to return to Mexico.").

---

[1] We note that the BIA assumed the credibility of Vanegas Torres's wife.

What we said in a prior case also involving an application under the Convention Against Torture to prevent removal to Mexico is apt here: while there may be "evidence of individual instances of government corruption, there is no evidence of systemic involvement of the government in torture that would make it more likely than not that [Vanegas Torres] would be subject to torture." *See Diaz-Hernandez v. Holder*, 635 F. App'x 159, 162 (6th Cir. 2015). Based on the overall record before us, we are not compelled to reverse the BIA's decision denying Vanegas Torres's application under the Convention Against Torture.

## III

Vanegas Torres's petition for review is **DENIED**.