**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0305n.06

Case No. 18-4117

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jun 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SANTIAGO LUCAS-LOPEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: COOK, NALBANDIAN, and MURPHY, Circuit Judges.

COOK, Circuit Judge.   Santiago Lucas-Lopez petitions for review of a Board of Immigration Appeals order affirming an immigration judge's denial of his applications for asylum and withholding of removal.  Because Lucas-Lopez failed to establish membership in a particular social group protected under the Immigration and Nationality Act, we DENY his petition for review.

**I.**

Lucas-Lopez, a twenty-one-year-old native Guatemalan and indigenous Mayan Indian, entered the United States illegally in February 2014.  A week later, the Department of Homeland Security initiated removal proceedings by filing a notice to appear alleging that Lucas-Lopez was "an alien present in the United States without being admitted or paroled."  At a master calendar hearing in October 2015, Lucas-Lopez admitted all the factual allegations made in the notice to

appear and conceded removability. The immigration judge designated Guatemala as the country of removal. Lucas-Lopez sought asylum and withholding of removal, claiming that he suffered past harm and feared future harm from gang members for his refusal to join a gang and his indigenous Mayan ancestry.[1]

At his individual hearing before the IJ, Lucas-Lopez testified that he was born in San Juan Ixcoy, Guatemala. His parents moved to the United States three years later, leaving him in Guatemala with his paternal grandmother and uncle. There, Lucas-Lopez fell victim to gang violence. The same gang routinely assaulted him on his way to school, never explaining why they targeted him.

During at least one altercation, the gang members demanded money. On other occasions, they offered Lucas-Lopez money to join the gang and help them rob other people, promising that— if he joined them—they would stop beating him up. But he refused. Because they offered him a spot in the gang, Lucas-Lopez suspected that some gang members might be Mayan. He saw the gang beat up other people, but did not know their heritage.

In 2014, a few years after his paternal grandmother's death, Lucas-Lopez moved to the United States, where he now lives with his parents and four biological siblings who were all born in the United States. When he left Guatemala, his younger sister stayed behind and lived with his maternal grandmother; he could not join her because the household had too little space and too little food. That sister, now fifteen or sixteen years old and still living in Guatemala, has no trouble

---

[1] In addition, Lucas-Lopez applied for protection under Article 3 of the Convention Against Torture, 8 C.F.R. §§ 1208.16(c)–1208.18. But he waived appeal of that claim before the Board, and does the same here by failing to mention it in his brief. *See Blanco-Santa Maria v. Sessions*, 707 F. App'x 384, 387 (6th Cir. 2017) (per curiam).

with gang violence. But Lucas-Lopez fears returning—he worries that gang members who think he ran away might kill him.

Before the IJ, Lucas-Lopez argued that he suffered past persecution and had a well-founded fear of future persecution at the hands of gang members because of his refusal to join the gang and his indigenous Indian ancestry. The IJ found Lucas-Lopez credible, but denied his asylum and withholding of removal claims after thoroughly analyzing his testimony and the other evidence provided. Lucas-Lopez failed to demonstrate past persecution or a well-founded fear of future persecution, the IJ explained, and even if he had, he did not establish membership in "a cognizable social group." Relying on Sixth Circuit precedent, the IJ found "no indication that [Lucas-Lopez's] particular social group . . . is a characteristic that is recognizable within Guatemalan society." Nor did the IJ find that the evidence established a nexus between his membership in that group and his fear of gang persecution, or between his race and the persecution he suffered. Having failed to meet his burden for asylum, the IJ concluded that Lucas-Lopez could not meet the higher burden required for withholding of removal.

Lucas-Lopez appealed the IJ's decision, but the Board dismissed the appeal. The Board agreed that Lucas-Lopez "has not established a cognizable group based on his refusal to join a gang." Specifically, he failed to establish that "the group is particular or socially distinct." The Board also agreed that Lucas-Lopez failed to show that "his race was the reason for any of the beatings," citing the IJ's finding that gang members told him the beatings would stop if he joined the gang. Agreeing that Lucas-Lopez did not demonstrate past persecution or a well-founded fear of future persecution, the Board affirmed the IJ's finding that he did not establish eligibility for asylum or withholding of removal. This petition for review followed.

**II.**

In general, we have jurisdiction to review final orders of the Board. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 497 (6th Cir. 2015). "Where, as here, the Board 'issued a separate opinion, rather than summarily affirming the IJ's decision, we review the [Board]'s decision as the final agency determination. To the extent the [Board] adopted the immigration judge's reasoning, however, [we] also review [ ] the immigration judge's decision.'" *Id.* (quoting *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013)). We review questions of law de novo, but give "substantial deference . . . to the Board's interpretation of the INA and accompanying regulations." *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). Both the IJ's and the Board's factual findings are reviewed for substantial evidence. *Zaldana Menijar*, 812 F.3d at 497. That means they "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Umana-Ramos*, 724 F.3d at 670 (quoting 8 U.S.C. § 1252(b)(4)(B)).

**III.**

Under the INA, the Attorney General may grant asylum to an applicant who proves that he meets the definition of "refugee." 8 U.S.C. § 1158(b). A "refugee" is "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). Lucas-Lopez bears the burden of establishing that he meets that definition, and "must show that his membership in a particular social group 'was or will be at least one central reason for persecuting' him." *Umana-Ramos*, 724 F.3d at 671 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). General conditions of gang violence are not enough. *Id.* at 670; *see*

*Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007) ("[T]he context must indicate that the asylum applicant is targeted for abuse based on his membership in a protected category.").

"A 'particular social group' must meet three criteria: (1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019); *Zaldana Menijar*, 812 F.3d at 498. If the applicant fails to establish the existence of "a particular social group," he necessarily fails to show that persecution occurred "on account of" his membership in that group. *See Umana-Ramos*, 724 F.3d at 671.

The Board found that Lucas-Lopez's first proposed group—persons who have refused to join a gang—lacked sufficient particularity or social distinction. We agree. In *Umana-Ramos*, we held that the proposed social group of "young Salvadorans . . . threatened [for] the[ir] refus[al] to join the MS gang" lacked particularity because it was too broad; "it could include all Salvadoran youth who are not members of the MS gang." *Id.* at 673–74. So too here, Lucas-Lopez's proposed group could include every Guatemalan who has declined to join a gang. He has failed to show that this otherwise boundless "group can be described in terms sufficiently distinct such that the community would recognize it as a discrete class of persons." *Zaldana Menijar*, 812 F.3d at 498; *Umana-Ramos*, 724 F.3d at 674.

Nor has Lucas-Lopez satisfied the social distinction requirement. Though not conclusive, we have held that the proposed group of "young Salvadorans who have refused recruitment by the MS gang" lacks social distinction. *Umana-Ramos*, 724 F.3d at 674; *see Cruz-Guzman*, 920 F.3d at 1036 (purported social group of "[El Salvadoran] males targeted by MS-13 to work as informants" lacked social distinction); *Zaldana Menijar*, 812 F.3d at 498–99 (purported social

group of "El Salvadoran male youth, who were forced to actively participate in violent gang activities for the majority of their youth and who refused to comply with demands to show their loyalty through increasing violence" lacked social distinction).

Like in *Umana-Ramos*, the record here fails to establish that Guatemalans perceive this group as a distinct segment of the population. 724 F.3d at 674. Nor does it contain evidence suggesting that those who refuse recruitment by the gang are more likely than other citizens to suffer from gang violence. *See id.* Instead, Lucas-Lopez's testimony tells of widespread gang violence, indiscriminately applied. To be sure, from his testimony, the gang's violent acts appear connected to financial gain, not refusal to join the gang. AR at 119 ("That's what they wanted. Me to join them and so that way I could go with them and rob other people that had money."). His attempt to frame the group narrowly as those who refused to join a gang *and* affirmatively espoused their "moral belief that gang activity represents something reprehensible" fares no better. *See Blanco-Santa Maria*, 707 F. App'x at 387–88 (upholding Board's determination that purported group of "young, male Salvadoran students who . . . expressly oppose gang practices, believe in the rule of law, and oppose crime and violence" lacked social distinction).

Lucas-Lopez's second proposed group—indigenous Mayan Indians—fails because he did not establish a nexus between his persecution and his race. *See Zaldana Menijar*, 812 F.3d at 500 ("Zaldana's fear of gang violence is certainly justified, but it lacks a nexus to his purported group membership.") As the IJ and the Board both highlighted, Lucas-Lopez testified that the gang members would stop beating him up if he joined the gang. These offers to join the gang led Lucas-Lopez to suspect that some gang members might in fact be Mayan. In addition to inviting him into the fold, he testified that the gang members never explained why they attacked him. Because

substantial evidence supports the conclusion that Lucas-Lopez did not establish the required nexus, his asylum claim fails. *See Cruz-Guzman*, 920 F.3d at 1037.

Lucas-Lopez's withholding of removal claim similarly fails. To qualify for withholding of removal, he must show a "clear probability" that, if removed to Guatemala, his "life or freedom would be threatened in that country because of [his] . . . membership in a particular social group." *Zaldana Menijar*, 812 F.3d at 498 (quoting 8 U.S.C. § 1231(b)(3)(A)). He has not demonstrated his membership in a particular social group, so he cannot succeed on his withholding of removal claim. *See Umana-Ramos*, 724 F.3d at 674.

Because Lucas-Lopez has not demonstrated eligibility for asylum or withholding of removal, we need not consider his argument that the IJ incorrectly found that changed circumstances—his entering adulthood and learning Spanish—would enable him to return to his hometown or safely relocate elsewhere in Guatemala. Even were Lucas-Lopez eligible, however, we could not address this argument because he did not present it to the Board. *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) ("[S]ection 1252(d)(1) provides that federal courts are without jurisdiction to hear an immigration appeal when administrative remedies have not been exhausted."); *see Hasan v. Ashcroft*, 397 F.3d 417, 419–20 (6th Cir. 2005) (holding that the court lacked jurisdiction to review the IJ's credibility determination because the petitioner did not reasonably develop the issue in his brief to the Board).

**IV.**

We DENY the petition.