NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0488n.06

No. 20-4172

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 27, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BEISER PEREZ-RAMIREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. Beiser Perez-Ramirez, a Guatemalan citizen, appeals the Board of Immigration Appeals' denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture. Perez's asylum and withholding of removal claims require him to prove that he belongs to a particular social group and has a fear of persecution based on his membership in that group. However, Perez's proposed group of "young Guatemalan men between the ages of 15 and 25 who have opposed gang activity and lack protection" is too vague and indeterminate to qualify as a particular social group. Perez also does not qualify for relief under the Convention Against Torture, because he has not shown that the state would acquiesce in torture.

Perez's application is based on his fear of being killed for resisting gang recruitment. Perez lived in a small village in Guatemala with his mother, grandparents, and four siblings. His father

permanently moved to the United States when he was 5 years old. When Perez was about 15 or 16 years old, three gang members beat and robbed him, and told Perez that they wanted to recruit him. The gang members also instructed Perez to "think about what was convenient for [him] because being with them would help [him] make a lot more money than [he] would make by working," and said they would "come look for [him] later." Perez knew the assailants were gang members because they identified themselves as such and had tattoos, chains, and a knife that were typical of gang members. About a month later, the same gang members beat Perez again. They asked Perez if he "had thought about what they had told [him]," and threatened to break his arm and fingers if he did not join the gang. Perez said he would not join the gang, and the gang members responded by beating him further and warning him that they would continue to follow him until he joined. The gang members also told Perez that they wanted him to join because they "wanted to gain territory" and further their criminal exploits.

The same three gang members, along with two additional members, pursued Perez for a third time a year later. Perez ran away and hid until they passed him. After the third incident, Perez told his mother that he "couldn't take it anymore." Perez did not report any of the attacks to the police because the closest police station was about a two-hour drive away and the police "never" came to his village. The road to the village was in poor condition and cars rarely navigated it. Perez said that if he had reported the attacks, the police "wouldn't have come," and he had only ever seen a police officer in his village after someone died. In his asylum application, Perez also asserted that he did not file a police report because gang members bribe law enforcement.

Between six months and a year after his third encounter with the gang members, Perez fled to the United States because he believed the gang would kill him if he stayed in Guatemala. Perez traveled to the United States with his cousin who was being threatened by the same gang. Perez

entered the United States without inspection in April 2015 as an unaccompanied minor. He filed an application for asylum with United States Citizenship and Immigration Services in October 2015, and the Department of Homeland Security served him with a Notice to Appear in November 2015 based on a violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act.

Perez believes that if he returns to Guatemala, the gang will kill him for running away and "refus[ing] to join them." Perez would no longer have the option to join the gang, because they would not give him any more chances after he repeatedly refused them. He is afraid of being tortured by the gang, which he knows "kill[s] people, not even for money [but] out of fun, they torture, they kidnap, they kill." Perez's fear is based on his own experience and the murders of two neighbors. One neighbor, Inofre Domingo, was shot in the head by the gang in 2011 after he refused to join. The gang also killed a family friend and neighbor, Liberato Bravo, after he resisted their recruitment efforts. Perez stated that the gang "mutilated and chopped [him] into small pieces," and his "face and body were unrecognizable." Perez fears being tortured and killed like Bravo was. Perez stated that he could not relocate within Guatemala to escape the gang, as he does not have any family in other parts of the country and the gangs have a national presence.

The United States Immigration Court denied Perez's application for asylum, withholding of removal, and protection under the Convention Against Torture. The court found that Perez "testified credibly" but failed to satisfy the requirements for asylum or withholding of removal. The court concluded that the gang beatings were not severe enough to constitute past persecution or a well-founded fear of future persecution. Perez also did not establish objective fear of persecution, because he did not provide "specific evidence…that the three or five individuals continue to look for him or that there is anyone at all that is looking for him." The court determined that Perez failed to show that the Guatemalan government was unable or unwilling to protect him,

because although Guatemala struggles to combat gang violence as a general matter, Perez did not provide evidence that law enforcement would have been unable to protect him in his specific case. Perez also did not prove that he was unable to relocate within Guatemala. Finally, the court concluded that Perez's proposed social group of "young Guatemalan men between 15 and 25 who oppose gang recruitment and lack adequate protection" was not immutable, particular, or distinct. Even if his proposed group did meet those requirements, Perez did not show that his group membership was the cause of his beatings, which may have instead been caused by criminal intentions. The court denied Perez relief under the Convention Against Torture because he did not establish that the Guatemalan government would be involved in, or acquiesce to, torture.

The Board of Immigration Appeals first mistakenly dismissed the appeal due to a clerical error, but later dismissed the appeal on the merits. The Board concluded that Perez's proposed group did not qualify as a particular social group because it included "vague concept[s] that take[] into account a wide variety of situations," and Perez did not present evidence that the group was "socially distinct within the community." According to the Board, the immigration court did not err by finding that even if Perez established a particular social group, he failed to show that his group membership was the cause of the attacks. Consequently, Perez did not meet the requirements for asylum or withholding of removal. The Board also adopted the immigration court's reasons for denying relief under the Convention Against Torture. The Board rejected Perez's argument that the immigration court committed a due process violation, as Perez did not "specifically explain how any defect in proceedings, including any failure to consider evidence, may have affected proceedings."

On appeal, Perez argues that his proposed social group is cognizable and that his group membership was the cause of his persecution. Perez further asserts that he is entitled to relief

under the Convention Against Torture because the Guatemalan government would acquiesce to torture, and that the immigration court and the Board violated Perez's right to due process. Perez's failure to establish a particular social group is dispositive of his asylum and withholding of removal claims, so we do not address Perez's argument that the Board conceded other issues by failing either to state its reasoning or to explicitly adopt the immigration court's reasoning.

Perez's proposed social group of "young Guatemalan men between the ages of 15 and 25 who have opposed gang activity and lack protection" is too vague and broad to meet the requirements of a particular social group. To qualify for asylum, Perez must show that he is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Withholding of removal also requires Perez to demonstrate membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A). A particular social group must satisfy "three criteria: (1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019) (citations omitted). The particular social group cannot be "circularly defined by the fact that it suffers persecution," so a group "must share a narrowing characteristic other than their risk of being persecuted." *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011).

Perez's group is primarily defined as young men who resist gang recruitment. Perez's additional requirements for his proposed group—that the members are men "between the ages of 15 and 25" who "lack protection"—are too indeterminate to qualify as a particular social group.

The record shows that gangs in Guatemala target a wide variety of people for recruitment, including children under age 15 and women, so Perez's proposed group does not have a clear boundary that separates it from the rest of society. It is also unclear what type of action would be required to "oppose" gang membership, and there are many ways in which individuals could "lack protection." Perez argues that his community would have viewed his lack of a father at home as an obvious lack of protection, but that is not enough to prove that individuals lacking protection is a discrete group of people who share the same identifiable characteristics. We have rejected several similar attempts to add additional criteria in order to meet the particularly and distinctness requirements, such as proposed groups of "young male El Salvadoran students who wish to pursue professional careers, oppose gang practices, believe in the rule of law, . . . and oppose crime and violence" and "women under the age of 17 who refuse to join [MS–13] in El Salvador because they are opposed to the practices of the gangs." *See Blanco-Santa Maria v. Sessions*, 707 F. App'x 384, 387–88 (6th Cir. 2017); *Escobar-Batres*, 385 F. App'x at 447.

Perez's claim for relief under the Convention Against Torture fails because he did not prove that the Guatemalan government would participate in, condone, or acquiesce in any potential torture. The Board did not err by adopting the reasoning of the immigration court, which concluded that Guatemala's struggle to combat gang violence is insufficient to prove government acquiesce to torture in Perez's particular case. We have held that a government's "failure or inability to protect citizens, alone, does not show acquiescence." *Fernandez-Galvan v. Garland*, 851 F. App'x 537, 541 (6th Cir. 2021); *see also Torres v. Sessions*, 728 F. App'x 584, 589 (6th Cir. 2018). Furthermore, "general fear of crime is 'not sufficient to establish eligibility for withholding of removal under the CAT.'" *See id.* (quoting *Palma-Campos v. Holder*, 606 F. App'x 284, 287 (6th Cir. 2015)).

The decisions of the immigration court and the Board did not deny Perez due process. The immigration court thoroughly discussed the evidence in the record supporting Perez's application, and the Board provided an analysis of why Perez could not prove that he belonged to a particular social group or suffered persecution due to that membership. To prevail on a due process claim, Perez must show "proof of prejudice." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016) (quoting *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005)). Perez has failed to do so, so this court will not reach the merits of his due process claim. *See id.* (citing *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008)).

We deny the petition for review.