RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FATIMA KANTE,

> *Petitioner,*

> v.

ERIC H. HOLDER, JR., Attorney General,

> *Respondent.*

No. 08-4043

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A95 589 074.

Decided and Filed: January 7, 2011[*]

Before: MERRITT, ROGERS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Brian C. DiFranco, DiFRANCO LAW OFFICE, Columbus, Ohio, for Petitioner. Theodore C. Hirt, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

MERRITT, Circuit Judge. Fatima Kante petitions for review of the order of the Board of Immigration Appeals affirming the immigration judge's decision denying her application for asylum, withholding of removal and relief under the Convention Against Torture. For the reasons set forth below, we deny the petition for relief.

---

[*]This decision was originally issued as an "unpublished decision" filed on January 7, 2011. On February 2, 2011, the court designated the opinion as one recommended for full-text publication.

## I. Facts and Proceedings in the Immigration Court and Board of Immigration Appeals

Kante is a native and citizen of Guinea who entered the United States in 2002 without documentation. Kante was born there in 1980 and her father owned a grocery store. From 1984 to 2008, Guinea was ruled by President Lansana Conte, leader of the Party of Unity and Progress. Various political parties opposed President Conte through the years, including the "Rassemblement du pueple de Guinea," loosely translated as the Rally of the Public of Guinea, or "RPG."[1]  Kante is currently married to a native of Sierra Leone.

### *Asylum Applications and Hearing*

On July 25, 2002, shortly after her arrival in the United States, Kante filed an application for asylum because she was a victim of violence in her home town of Macenta, Guinea, in October 2001. In that original application, filed without assistance of counsel, Kante claims that "rebels" broke into her family compound and beat and raped her and tortured or raped every member of her family. Kante claimed her parents were taken away after the attack and that she then fled Macenta. In the original application, Kante did not claim the attacks had any politically-related motive or that the attackers were in any way affiliated with the government. She stated that the rebels took her family's money and belongings. In response to a question on the application as to whether Kante or any member of her family had ever been threatened or mistreated by government authorities, she checked "no." Her case was referred to the Immigration Court.

In August 2005, Kante, represented by counsel, filed a second application in which she claimed that she and her family were "attacked by rebels of unknown

---

[1]After Conte's death in December 2008, a military junta known as the Council for Democracy and Development proclaimed Moussa Dadis Camara head of state. The constitution was suspended and National Assembly dissolved. Petitioner claims that this junta has strong connections to the regime of Conte, the president in control when petitioner lived in Guinea. This change in government is the basis of a claim by petitioner that the current turmoil and uncertain future of Guinea increases the likelihood that she will face future persecution at the hands of the government if she returns to Guinea.

affiliation," but that her family was targeted by government security forces due to her father's and brothers' support of the opposition RPG forces.

A hearing on the two asylum applications was held on June 11, 2007. Kante first testified that her father was in charge of RPG meetings and marches, but then said that he and her brothers were RPG members who only attended events. She testified that her father had been warned to "stay off" the RPG by people who stole from the store and shot at the store. She testified that on October 10, 2001, a car entered the family compound and a dozen armed men dressed in camouflage attacked the family. She said that the men told her father that they had warned him before but he wouldn't listen. She claims that she was raped and beaten into unconsciousness by the men and her family taken away in a truck. When she awoke, her family was gone. She testified that she had heard that they attacked another family in the neighborhood as well.

Kante traveled to Conakry, a larger city about 7 or 8 hours from her town. She was unable to learn what happened to her family. After five months she went back to her home, but no one was there. A friend of her father's helped her get a passport, and she was a stowaway on a boat headed for the United States. When she arrived, a man named Mohammad, also from Guinea, helped her with the original asylum application.

On cross-examination, Kante admitted that rebel groups from Sierra Leone came to Macenta in 2001 and that the group that attacked her family could have been from Sierra Leone. She admitted that she stated in her first asylum application that the group that attacked her family took money and property from them and that she had not conveyed in the first application her claim that she heard the rebels tell her father that he had been warned but would not listen.

### *The Immigration Judge's Decision*

On June 11, 2007, the immigration judge issued a written opinion denying Kante's application for asylum, withholding of removal and protection under the Convention Against Torture. He found that her testimony at the hearing and the information supplied in the second asylum application were inconsistent with the

original asylum application, particularly the fact that the original application made no reference to the RPG or any political organization. He also noted that she checked "no" in response to the question on the application concerning whether she or any member of her family belonged to a political party or group. As for the attack, the immigration judge found that Kante acknowledged in an asylum interview that when she used the word "rebels" she was including both Guinean government forces or rogue individuals from Guinea or Sierra Leone.

Given these facts, the immigration judge found no nexus between the attack on Kante in October 2001 and her or her family's political activity, and that she was not "targeted for persecution" because she was part of a "particular social group," that is, females subject to sexual assault. He found "no evidence" that women were a "disfavored group" in Guinea, or that there was a "pattern or practice" of persecution against them. Finally, the immigration judge found "no evidence" that it was more likely than not that Kante would be tortured if she returned to Guinea.

Finding Kante removable as charged, the immigration judge noted inconsistencies among her two applications and her testimony such that Kante failed to provide "sufficient, credible testimony and other evidence" to support her claim of past persecution.

### The Board's Decision

On July 28, 2008, the Board of Immigration Appeals dismissed Kante's appeal, agreeing that Kante "failed to establish by credible evidence that any harm she may have suffered while in Guinea was related to a protected ground" and that the inconsistencies between her original application on the one hand and her second application and hearing testimony on the other "was sufficient to place her veracity into question." It also found that Kante had failed to establish that "females subject to sexual assault" was a readily-identifiable social group that could be defined "with sufficient particularity to delimit its membership." Finally, the Board found that Kante failed to show eligibility for withholding of removal or protection under the Convention Against Torture. This appeal followed.

## II. Discussion

Kante contends the harm she suffered was due to political opinion imputed to her based on her father's conduct and her membership in a particular social group. Kante raises essentially the same issues on appeal before this Court as she raised before the Board of Immigration Appeals, namely that the immigration judge erred: (1) in making an adverse credibility finding; (2) in finding that the evidence did not support a nexus between the attack on Kante and her father's political activity; (3) in finding that women subjected to rape as a form of government control do not constitute a "particular social group;" and (4) in finding that Kante did not have a well-founded fear of future persecution should she return to Guinea. She also raises for the first time in this appeal the fact that the military junta that came to power in December 2008 constitutes "changed circumstances" in Guinea that warrant a remand for further proceedings as to whether she can establish a well-founded fear of future persecution under this new regime should she return to Guinea. She does not pursue her claim under the Convention Against Torture.

### Substantial Evidence Supports the Adverse Credibility Finding and the Finding that Past Persecution of Kante Was Not Based on the Political Activity of Her Father

A refugee is a person unable or unwilling to return to her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The persecution must be by "the government, or persons [the] government is unwilling or unable to control." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). If past persecution is established, a rebuttable presumption arises that the applicant has a well-founded fear of future persecution, shifting the burden to the government to rebut the presumption by establishing that conditions in the applicant's home country have changed to such an extent that the applicant no longer has a well-founded fear of future persecution should she return. *See* 8 C.F.R. § 208.13(b)(1). Alternatively, an applicant can demonstrate a well-founded fear of future persecution by showing that she has a genuine fear and that a reasonable person in her circumstances would fear persecution on account of a statutorily-protected ground if she returned to her

native country.   The applicant must present evidence establishing an "objective situation" under which her fear can be deemed reasonable. *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994).

Substantial evidence supports the immigration judge's finding that Kante failed to establish that the attack she suffered was caused by Guinea government forces motivated by retribution for her father's political activity with the RPG.  First, Kante changed her description of her attackers between her first and second asylum applications.  In her original application and in the asylum interview she stated that she did not know if the "rebels" were from Guinea or Sierra Leone, or whether they were affiliated with any government group as they lacked insignia or uniforms that would identify them and they did not indicate where they were from.  It was only in her second application that she specifically identified them as being affiliated with the Guinea government.

Second, in her original application for asylum she claimed that the attackers took money and property from her family and offered no proof that the rebels, even if they were somehow affiliated with the Guinea government, were motivated by politics instead of financial gain.  It is only in her second application  that she claimed that "government security forces" came to her father's store and stole goods and threatened her father for his support of the RPG, and then at the hearing she testified that she heard the rebels say during the attack that they had previously warned her father not to associate with the RPG and he did not listen, indicating the attack may have been politically motivated.

Based on these inconsistencies, the immigration judge found Kante not credible and denied her claims for asylum and withholding of removal.  The Board also pointed to these inconsistencies in dismissing the appeal.  Because the adverse credibility findings are supported by the record, we affirm the denial of the application for asylum and withholding of removal.  Kante cites cases from the First and Ninth Circuits to support her assertion that the "failure to file an application that is not as complete as petitioner's testimony does not mean the testimony is not credible."  Kante Br. at 10.

However, this does not mean relevant inconsistencies should be ignored. Rather, as this court has explained, "[w]hile it is true that 'irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination,' discrepancies may be relevant if they can 'be viewed as attempts by the applicant to enhance his claims of persecution.'" *Ndrecaj v. Mukasey*, 522 F.3d 667, 674-75 (6th Cir. 2008) (citation omitted) (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)). Because the immigration judge used the discrepancies in Kante's application and testimony to inform an issue at the heart of her application — that is, whether Kante suffered persecution on account of an imputed political opinion — they could be characterized as relevant inconsistencies. Therefore, the immigration judge did not err in basing his credibility determination on these inconsistencies.

Besides finding that Kante did not show past persecution based on imputed political opinion, the immigration judge also found that she did not have a well-founded fear of future persecution should she return to Guinea. The attack by the rebels was an isolated incident and Kante reported no more trouble once she left Macenta and stayed with friends in Conakry and Camsar. To the extent that Kante argues that her claims should be remanded due to current country conditions in Guinea, this Court is unable to address that concern because we are limited to deciding Kante's petition "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Moreover, we do not have the ability to remand this case to the Board for additional fact finding, as Congress has explicitly forbidden us to do so. *See Fang Huang v. Mukasey*, 523 F.3d 640, 655-56 (6th Cir. 2008). Though the conditions in Guinea have reportedly deteriorated badly since the formation of the administrative record, such developments are beyond the scope of our review. Should Kante believe that recent developments affect her eligibility for asylum, the proper remedy is to file a motion with the Board to reopen her asylum application pursuant to 8 C.F.R. § 1003.2(c)(3)(ii).[2]

---

[2] A party must generally file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(I); *see also* 8 C.F.R. § 1003.2(c)(2). However, one exception to this ninety-day time limit is for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence

### *Kante Failed to Show Membership in a "Particular Social Group" of "Women Subjected to Rape as a Method of Government Control"*

Kante also contends that she was targeted for the attack and rape because she is a member of a "a particular social group" of "women subjected to rape as a method of government control" because the attack was committed by members of the Guinean armed forces or political enemies of the RPG in retaliation for her father's support of the RPG. The immigration judge, as well as the Board, did not make such a finding, noting that the definition of the "particular social group" submitted by Kante is "overly broad" and otherwise does not meet the parameters of a "particular social group."

The phrase "membership in a particular social group" is not statutorily defined, but several Board decisions have refined and articulated the requirements to include: (1) a shared "immutable" or "fundamental" characteristic; (2) "social visibility;" (3) "particularity;" and (4) the group "cannot be defined exclusively" by the fact that its members have been subject to harm. *Matter of A-M-E & J-G-U*, 24 I.&N. Dec. 69, 74 (BIA 2007), *aff'd sub nom. Ucelo-Gomez v. Mukasey*, 509 F.3d 70 (2d Cir. 2007); *accord Castellano-Chacon v. INS*, 341 F.3d 533, 546-50 (6th Cir. 2003), *modified on other grounds*, *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Due to the generalized and far-reaching nature of Kante's submitted classification, it has not previously served as a definable limitation. *See Castellano-Chacon*, 341 F.3d at 548. In addition, the group posited by Kante is circularly defined by the fact that it suffers persecution, and the group does not share any narrowing characteristic other than the risk of being persecuted. We have held that a social group may not be circularly defined by the fact that it suffers persecution. In other words, the individuals in the group must share a narrowing characteristic other than their risk of being persecuted. *See Castro-Paz v. Holder*, 375 F. App'x 586, 590-91 (6th Cir. 2010). Moreover, as a factual matter, Kante did not show that government forces used rape as a means of maintaining control

---

is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii) ("The time and numerical limitations . . . shall not apply to a motion to reopen proceedings . . . [t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing[.]").

or that the Guinean society viewed females as a group specifically targeted for mistreatment.

Therefore, the immigration judge reasonably concluded that the social group identified by Kante did not constitute a particular social group warranting relief within the meaning of the Immigration and Naturalization Act and her applications for asylum and withholding of removal on this ground were properly denied.

For the foregoing reasons, we deny the petition.