NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0578n.06

10-3239

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 17, 2011*

LEONARD GREEN, Clerk

MARIO RIVAS-FIGUEROA,                    )
                                         )
        Petitioner,                      )
                                         )       ON PETITION FOR REVIEW OF
v.                                       )       AN ORDER OF THE BOARD OF
                                         )       IMMIGRATION APPEALS
ERIC H. HOLDER, Jr.,                     )
                                         )
        Respondent.                      )

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Mario Rivas-Figueroa petitions for review of an order of the Board of Immigration Appeals denying him asylum under 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the United Nations Convention Against Torture (CAT). The Board held that Rivas-Figueroa failed to establish that he was a member of a "particular social group" for the purpose of establishing eligibility for relief under the Immigration and Nationality Act (INA). Rivas-Figueroa claims that this determination was in error and that his purported social group – Guatemalans targeted for revenge by members of the MS-13 gang – satisfies the requirements of the INA. But, because Rivas-Figueroa's asserted social group is solely defined by the fact of its persecution, we conclude that it does not meet the definition of "particular social group" under existing Sixth Circuit precedent and, thus, that it is legally

insufficient to warrant asylum or withholding of removal. We therefore deny the petition for review.

**FACTUAL AND PROCEDURAL BACKGROUND**

The administrative record indicates that Rivas-Figueroa is a native and citizen of Guatemala who first came to the United States illegally in 2000 and settled in Berryville, Arkansas, where he worked as an auto mechanic. While living in Arkansas, Rivas-Figueroa married a citizen of Mexico and had a child. In October 2005, Rivas-Figueroa returned to Guatemala, along with his wife and child, intending to start a business there.

According to Rivas-Figueroa, when he arrived in his hometown in Guatemala, he discovered that a criminal gang called Mara Salvatrucha, also known as MS-13, was terrorizing the area. The gang had demanded that a neighbor and friend of Rivas-Figueroa's, a taxi driver named Angel Del Valle, pay them protection money, and when Del Valle was unable to collect the cash in time to meet the deadline, the gang demanded that he pay them even more, which Del Valle was unable to do. In January 2006, as Rivas-Figueroa and Del Valle stood on a sidewalk in their neighborhood, a automobile drove by and one of its occupants, whom Rivas-Figueroa said he recognized as a member of MS-13, began shooting at them. Although both men escaped without injury, Rivas-Figueroa testified that a member of the gang later came to his home and threatened to kill him if he aided Del Valle. Members of the gang also threatened Rivas-Figueroa's uncle, who lived on the same street, that if he did not report on Del Valle's movements, he also would be

killed.

Rivas-Figueroa testified that his wife and child fled back to the United States in early 2006 and that he followed two months later, re-entering illegally on May 15, 2006, by crossing over the border near Sasabe, Arizona. Six days later, on May 21, 2006, he was arrested by Immigration and Customs Enforcement agents in Kansas City, when he and more than a dozen other illegal immigrants were found riding in the covered bed of a pickup truck driven by a man who had been paid to take them from Arizona to various locations in the United States. Rivas-Figueroa was charged with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) and placed in proceedings by the Department of Homeland Security.

At his merits hearing in August 2008, Rivas-Figueroa conceded removability but requested asylum, withholding of removal, and protection under CAT. He submitted an application for asylum filed on January 31, 2008, in which he claimed that he had left Guatemala due to threats by MS-13 that they would kill him because he had witnessed his friend Del Valle's murder. At the hearing, however, Rivas-Figueroa testified that Del Valle was actually murdered a month after Rivas-Figueroa left Guatemala. He said that he later learned that his uncle and his uncle's pregnant wife had also been murdered by members of MS-13, and that men who his mother suspected were members of MS-13 had been asking about his whereabouts.

Following the hearing, the immigration judge ruled that Rivas-Figueroa had failed

to demonstrate eligibility for asylum or withholding of removal, basing this decision on his finding that Rivas-Figueroa was not a member of a "particular social group" as defined in 8 U.S.C. § 1101(a)(42). The immigration judge also found that Rivas-Figueroa was not eligible for protection under CAT because the Guatemalan government was attempting to control the MS-13 gang. The immigration judge did, however, grant Rivas-Figueroa voluntary departure.

The Board of Immigration Appeals affirmed the immigration judge's findings, agreeing that the social group in which Rivas-Figueroa claimed membership – Guatemalans whom MS-13 had targeted for revenge – did not meet the legal definition of a "particular social group" for purposes of the INA, and that Rivas-Figueroa did not qualify for protection under CAT because the Guatemalan government did not support the MS-13 gang or condone its actions. Rivas-Figueroa timely sought review.

**DISCUSSION**

We have jurisdiction to review final orders of removal issued by the Board pursuant to 8 U.S.C. § 1252(a). When the Board adopts the immigration judge's reasoning and supplements the immigration judge's opinion, that opinion, as supplemented by the Board, becomes the basis for review. *See Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). We review questions of law *de novo*, giving substantial deference to the Board's interpretation of the INA and agency regulations, which "will be upheld unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting

*Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009)).  We review the factual findings of both the immigration judge and the Board under the substantial-evidence standard, and we may not reverse those findings merely because we would have decided them differently. *Urbina-Mejia*, 597 F.3d at 364.  Moreover, these findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

The statute requires that an applicant for asylum must establish that he or she is a "refugee," 8 U.S.C. § 1158(b)(1), which is defined as a person who is "unwilling or unable to return to" his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  Persecution is defined as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004)).

To qualify for withholding of removal,  applicants  must demonstrate that it is more likely than not that their "life or freedom would be threatened in [their home] country because of the [their] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  This standard is even more stringent than the "well-founded fear" standard used to review asylum claims. *See Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004).  As a result, if an applicant fails to establish that he or she

is a "refugee" for purposes of asylum, the applicant will also fail to qualify for withholding of removal. *Id.*

Both the immigration judge and Board concluded that Rivas-Figueroa had failed to show that he was persecuted on the basis of one of the five protected grounds, finding specifically that the social group with which he claimed identity lacked the necessary social visibility and particularity to constitute a "particular social group." Rivas-Figueroa contends that social visibility and particularity are not explicitly required under the statute and that it was thus inappropriate to base the determination of his eligibility on those factors. However, we have recently held to the contrary in *Kante v. Holder*, 634 F.3d 321 (6th Cir. 2011). There we noted that to qualify, a "particular social group" must include a shared "immutable" or "fundamental" characteristic, "social visibility," and "particularity" and that it "cannot be defined exclusively" by the fact that its members have been subject to harm. *Id.* at 327 (citing *Matter of A–M–E & J–G–U*, 24 I. & N. Dec. 69, 74 (BIA 2007), *aff'd sub nom*. *Ucelo–Gomez v. Mukasey*, 509 F.3d 70 (2d Cir.2007)).

Rivas-Figueroa makes a persuasive argument that, under Sixth Circuit precedent, individuals who have been targeted for revenge by the MS-13 gang share an "immutable" or "fundamental" characteristic in that they cannot escape this designation through their own actions. *See Urbina-Mejia*, 597 F.3d at 366 (finding that former MS-13 gang members are a particular social group for purposes of the INA because even if they quit the gang, they will always be *former* members, and the impossibility of changing this designation

makes it an immutable characteristic). However, Sixth Circuit precedent also dictates that a qualifying social group cannot be defined solely by the fact of its members' persecution. As we noted in *Kante*:

> In addition, the group posited by [the petitioner] is circularly defined by the fact that it suffers persecution, and the group does not share any narrowing characteristic other than the risk of being persecuted. We have held that a social group may not be circularly defined by the fact that it suffers persecution. In other words, the individuals in the group must share a narrowing characteristic other than their risk of being persecuted.

634 F.3d at 327.

In this case, Rivas-Figueroa's social group is likewise defined exclusively by its risk of persecution through targeting by the MS-13 gang and, thus, lacks a "narrowing characteristic" beyond those broad limits. We therefore conclude that the immigration judge and the Board were correct in their determination that Rivas-Figueroa failed to show that he is a member of a "particular social group" for purposes of the INA and, as a result, is not entitled to asylum or withholding of removal.

Finally, because Rivas-Figueroa has not raised the issue in his brief, we conclude that he is not seeking review of the Board decision as to his claims under CAT.

**CONCLUSION**

For the reasons set out above, we DENY the petition for review.