NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0247n.06

No. 17-3884

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSE AGUSTIN-TOMAS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE UNITED STATES BOARD OF |
| JEFFERSON B. SESSIONS, III, Attorney | ) | IMMIGRATION APPEALS |
| General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**FILED**
May 22, 2018
DEBORAH S. HUNT, Clerk

BEFORE: DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Jose Agustin-Tomas, a native and citizen of Guatemala, seeks review of a ruling of the United States Board of Immigration Appeals (BIA) denying his request for withholding of removal.[1] In his petition for review, Agustin-Tomas submits that, if he were removed to Guatemala, he would face persecution based on the fact that he sought to become a member of the National Civil Police in early 2005. Substantial evidence supports the decision of the BIA that the petitioner established neither past persecution nor a clear probability of future persecution based on a statutorily

---

[1] Although Agustin-Tomas purports to seek review of the BIA's denial of a request for *asylum*, the administrative record is clear that Agustin-Tomas never sought asylum during the administrative portion of these proceedings, mainly because he conceded that he had not filed for such relief within one year of entering the United States, as is required by the provisions of 8 U.S.C. § 1158(a)(2)(B). Instead, through counsel, Agustin-Tomas made clear that he sought only withholding of removal to Guatemala.

protected ground. Because nothing in the administrative record compels a result contrary to that reached in the administrative proceedings, we deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Agustin-Tomas, now 32 years old, entered the United States without inspection in October 2005 after leaving his native Guatemala and traveling through Mexico. He claimed that, after graduating from high school at age 18, he applied to serve in the Guatemalan National Civil Police force "because [he] wanted to be a good person and make changes in [his] country." Approximately 500 individuals applied for positions with the police, but Agustin-Tomas was one of only about 300 applicants who passed the battery of tests given to the candidates.

After starting classes at the police academy, Agustin-Tomas began to receive threats from gang members living in his town. Agustin-Tomas explained that even though he did not wear a uniform as a trainee, gang members knew he was training to become a police officer because he lived in "a very small town and everybody knows each other." Eventually, Agustin-Tomas was attacked by individuals who hit him on the head with "a steel weapon," rendering him unconscious. According to Agustin-Tomas, his uncle found him lying in the street and took him to his home, where his mother cared for him. Agustin-Tomas did not report the attack to the police, allegedly because he feared for his family's safety and because he claimed that the Guatemalan police force was corrupt. Finally, after enduring threats for approximately three months, Agustin-Tomas left Guatemala for the United States on September 20, 2005.

In April 2013, Agustin-Tomas received a Notice to Appear for removal proceedings. At a hearing in October 2014, he conceded removability and filed a request for "withholding of removal only . . . due to the fact that he entered in '05 and we're just now filing. So there would

be a time issue, so it would be withholding of removal only." An evidentiary hearing then was scheduled and held two years later.

At that hearing, Agustin-Tomas explained that he was seeking withholding of removal based upon his membership in the social group of "[i]ndividuals from Guatemala that were either members of the police department or training to be members of the police department." He testified that the gang members who threatened and injured him warned that they would kill him if he became a police officer. However, even after he left the police academy due to his fear of further personal attacks or attacks on his family, Agustin-Tomas said that the gang members continued to threaten him, but now because they wanted him to become a member of the gang.

Agustin-Tomas said that he took these threats seriously because he knew that gang members had murdered another person at a police station but, nevertheless, had escaped arrest and prosecution. He also testified that he could not move to another area of Guatemala to escape the threats of personal injury because of his belief that the gang was "always going to persecute [him] in Guatemala." He held to this conviction even though his parents and siblings continued to live in the country without incident, up until his father was "hit one time" by an unidentified individual approximately one month before the evidentiary hearing.

Other evidence introduced at the hearing before the immigration judge included virtually identical statements submitted by various members of Agustin-Tomas's family and by friends seeking to corroborate the petitioner's testimony that he has been threatened with death on his return to Guatemala. Agustin-Tomas also introduced into evidence a 2013 Human Rights Report authored by the United States Department of State that noted both the considerable gang violence in Guatemala and the widespread police corruption and many abuses suffered by the citizenry at the hands of the police.

Presented with this evidence, the immigration judge concluded that Agustin-Tomas was a credible witness but that he had not suffered past persecution, severe injury, or systematic or prolonged targeting. Furthermore, the immigration judge found that the harassment Agustin-Tomas did experience was not perpetrated by a government actor but, rather, by gang members targeting Agustin-Tomas for recruitment into their organization. Based on this circumstance, the judge concluded that the petitioner failed to establish that he could not relocate safely to another region in Guatemala.

Agustin-Tomas appealed that ruling to the BIA, but the BIA dismissed the appeal, ruling that the petitioner failed to establish either past persecution or a clear probability that he would suffer future persecution based on membership in a recognized social group if he were removed to his native country. The BIA also concurred in the immigration judge's determination that any harm visited upon Agustin-Tomas was not inflicted by the government of Guatemala but by gangs who had targeted the petitioner for membership. Thus, according to the BIA, Agustin-Tomas failed to establish a nexus between his membership in a particular social group and any feared harm.

## DISCUSSION

**Standard of Review**

"Whe[n, as here,] the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Although we review questions of law *de novo*, *id.*, we must uphold factual

determinations by the BIA "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**Withholding of Removal**

Although Agustin-Tomas's appellate brief is couched in language challenging a denial of asylum, the record before us is clear that the petitioner sought only withholding of removal before the immigration judge and the BIA. Our review thus is limited to consideration of the administrative denial of that particular form of relief.

Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Agustin-Tomas could meet this burden either by showing that he suffered past persecution on account of one of the listed grounds, thereby giving rise to a rebuttable presumption of future persecution, or by showing that "it is more likely than not that he . . . would be persecuted . . . upon removal to that country" because of one of the listed considerations. 8 C.F.R. § 1208.16(b)(2). A petitioner cannot demonstrate the required fear of future persecution, however, if the "immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal, and under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.*

Agustin-Tomas argues that he has been and will be subjected to persecution because of his membership in a "particular social group"—a group he defines as trainees or members of the Guatemalan police force. In point of fact, the relevant immigration statutes do not define the term "particular social group." Numerous appellate court decisions and BIA decisions, however, "have refined and articulated the requirements to include: (1) a shared 'immutable' or 'fundamental' characteristic; (2) 'social visibility;' (3) 'particularity;' and (4) the group 'cannot be defined exclusively' by the fact that its members have been subject to harm." *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011) (citations omitted). "[W]hatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009) (alteration in the original) (citations omitted).

The very recitation of the common-characteristic requirement as interpreted by *Al-Ghorbani* lends support to the decisions of the immigration judge and the BIA that Agustin-Tomas "has not established a nexus between his purported particular social group and the harm he fears." Not only *could* Agustin-Tomas change his status as a member of his defined "particular social group," he actually *did* alter that "common characteristic" by withdrawing from the police academy after only a few months of training.

Nevertheless, even if we assume that this proposed group is cognizable as an extension of the recognized particular social group of "former member[s] of the national police," *see Matter of Fuentes*, 19 I. & N. Dec. 658, 662 (B.I.A. 1988), Agustin-Tomas's claim founders on the nexus requirement. To establish eligibility for withholding, Agustin-Tomas must show that his membership in the proposed particular social group "was or will be at least one central reason for

[his persecution]." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Matter of C-T-L-*, 25 I. & N. Dec. 341, 348 (B.I.A. 2010). Even after abandoning his quest for a job in law enforcement, Agustin-Tomas alleged, gang members continued to threaten him, although now couching those threats in terms of inducements to join the gang. The fact that the threats continued in that manner until Agustin-Tomas fled Guatemala further supports the administrative conclusion that Agustin-Tomas ultimately was targeted not because he sought to become a police officer, but rather because he was an able-bodied individual who could have been a valued member of a gang. Even more significantly, Agustin-Tomas testified that he fears harm upon return to Guatemala only because of the gang's recruitment demands, not because he used to be a police trainee. As we have recognized, a forceful attempt to recruit gang members "alone does not establish the nexus of persecution 'on account of' a protected statutory ground." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 500 (6th Cir. 2015). Substantial evidence in the record thus supports the determination of the BIA that Agustin-Tomas did not establish a nexus between his membership in a recognized particular social group and the harm he fears. Because Agustin-Tomas has failed to establish the requisite nexus, we need not consider whether the attack and multiple threats Agustin-Tomas received were egregious enough to constitute past persecution on that basis.

We in no way mean to downplay the real and justifiable fear felt by those seeking to flee violence in their native countries. Federal immigration law, however, requires that an individual seeking to withhold removal to a country rife with gang violence demonstrate that the threatened persecution will be inflicted *by the government* or by persons or groups that *the government is unwilling or unable to control*. *See, e.g.*, *Khalili*, 557 F.3d at 436.

We do not doubt the sincerity of Augustin-Tomas's belief that violent gangs exert such pressure on the citizenry and on elected officials that the gangs have become, for all practical

purposes, the *de facto* governments of Guatemala and other nations. Here, however, Agustin-Tomas has failed to make the required showing that the Guatemalan government was responsible for the threats against him or was unwilling or unable to control those individuals who did make the threats. Indeed, although the State Department's 2013 Human Rights Report notes that Guatemalan gangs are responsible for considerable violence in the country, it is the National Civil Police, the very organization that Agustin-Tomas was training to join, that is responsible for much abuse and mistreatment of Guatemalan citizens. And even though Agustin-Tomas himself was training to join Guatemala's police force, he chose not to report the alleged attack and threats against him to those authorities. Under these circumstances, by not doing so, he has failed to meet his burden of showing that the government either perpetrated the persecution of which he complains or that it demonstrated an unwillingness or inability to control the individuals responsible for such intimidation.

## CONCLUSION

Thirteen years ago, while training to become a member of the Guatemalan police force, Agustin-Tomas suffered one physical attack and was threatened with additional violence directed toward him and toward his family. In those initial threats, Agustin-Tomas was warned not to become a police officer, leading him to assert in these proceedings that he was subjected to persecution based upon his membership in a particular social group—those individuals training for or serving in the police force. After the petitioner left the police academy, however, the individuals threatening him continued their harassment and made clear that their motivation was to have him join their gang. Such facts, offered by Agustin-Tomas himself, support the determination of the BIA that the petitioner's status as a police trainee was not the true reason that he was targeted for the threats of violence. Thus, Agustin-Tomas has failed to prove the

required nexus between his status as a police trainee and the harm he fears upon return. Not only do the facts before us support the BIA's decision, they clearly do not *compel* us to reach a contrary conclusion, as is required by case law to overturn the BIA's ruling. Moreover, substantial evidence in the record—including the fact that Agustin-Tomas's family members have continued to live in Guatemala for years without persecution—supports the conclusion that the petitioner cannot prove that he has a well-founded fear of future persecution upon return to his homeland.

We thus DENY his petition for review.