**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0419n.06

No. 18-3809

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| SANDRA ELIZABETH RIVERA-GONZALEZ, ISMAEL URQUILLA-RODRIGUEZ, C-V-U-R, and F-J-U-R, | ) ) ) | |
| | ) | ON PETITION FOR REVIEW OF |
| **Petitioners,** | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| WILLIAM P. BARR, Attorney General, | ) | **OPINION** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**FILED**
Aug 13, 2019
DEBORAH S. HUNT, Clerk

**BEFORE: MOORE, COOK, and THAPAR, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Petitioners Sandra Elizabeth Rivera-Gonzalez ("Rivera-Gonzalez"), Ismael Urquilla-Rodriguez ("Urquilla-Rodriguez"), C-V-U-R, and F-J-U-R (collectively "Petitioners"), appeal the order by the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of their application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because Petitioners have not challenged the BIA and IJ's conclusions that they are not members of a particular social group, and, alternatively, because substantial evidence supports the BIA and IJ's determinations, we deny the petition for review. Additionally, because Petitioners did not challenge the IJ's denial of their application for CAT protection or withholding of removal before the BIA, we lack jurisdiction to consider those claims and therefore dismiss them.

## I. FACTUAL & PROCEDURAL BACKGROUND

Rivera-Gonzalez and Urquilla-Rodriguez are married and are citizens of El Salvador; they have two children together, C-V-U-R and F-J-U-R, who are also Salvadoran citizens. AR 199–200 (Rivera-Gonzalez Asylum Appl.). Urquilla-Rodriguez and C-V-U-R arrived in the United States from El Salvador in May 2014. AR 119, 123 (4/16/2015 Immigration Ct. Tr.). Rivera-Gonzalez entered the United States in July 2014 with F-J-U-R. *Id.* In May and July 2014, the Department of Homeland Security issued Petitioners Notices to Appear ("NTA") in removal proceedings. AR 262, 334, 405, 470. The NTAs charged each Petitioner with having entered the United States without permission, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* On April 16, 2015, Rivera-Gonzalez and F-J-U-R conceded removability before the immigration court. AR 119–20 (4/16/2015 Immigration Ct. Tr.). Following a hearing, the immigration court found Urquilla-Rodriguez and C-V-U-R were also removable. *See* AR 147 (8/16/2017 Immigration Ct. Tr.).

On May 7, 2015, Urquilla-Rodriguez and Rivera-Gonzalez filed separate applications for asylum, withholding of removal, and CAT protection; both listed the other as derivatives on their application. R. 199–201 (Rivera-Gonzalez Asylum Appl.); AR 365–67 (Urquilla-Rodriguez Asylum Appl.). C-V-U-R and F-J-U-R were also listed as derivatives of their parents' asylum applications. *Id.* In their applications, Petitioners alleged that they had been subjected to past persecution and also had a well-founded fear of future persecution in El Salvador due to their political opinions and because they refused to support the Salvadoran gangs. AR 203–08 (Rivera-Gonzalez Asylum Appl.); AR 371–75 (Urquilla-Rodriguez Asylum Appl.).

On August 16, 2017, the Petitioners attended a consolidated merits hearing before an Immigration Judge to resolve their asylum applications. AR 142, 150 (8/16/2017 Immigration Ct. Tr.). They also submitted additional documentation, including a June 5, 2014 police report, a letter from the principal of C-V-U-R's school indicating that she attended the school from January until May 2014, and a report relating to Urquilla-Rodriguez's cousin, Carmen Gonzales de Urquilla. AR 224 (Urquilla-Rodriguez police report); AR. 225 (letter from principal); AR 227 (Carmen Gonzales de Urquilla police report).

At the hearing, Urquilla-Rodriguez testified that he began to have problems with the 18th Street gang in January 2014. AR 154 (8/16/2017 Immigration Ct. Tr.). The first time the gang approached him, the gang members asked Urquilla-Rodriguez to provide them with weapons and training. *Id.* at 155. He explained later that they also requested that he give them money. *Id.* at 177. Urquilla-Rodriguez testified that the gang members believed he could train them based on his previous military experience and his employment in a security company. *Id.* at 155, 173. He explained that the gang members knew him because they had previously extorted the owner of the security company. *Id.* Urquilla-Rodriguez also explained that the gang members had previously told his employer "that if he did not collaborate with what they were asking that his employees would bear the consequences." *Id.* at 173.

During the January 2014 incident, the gang members stated that Urquilla-Rodriguez "would have to face the consequences" if he refused to assist them. *Id.* at 155. Although he told them he would collaborate with them, Urquilla-Rodriguez testified he did not assist them because he was "against that." *Id.* at 155–56. The gang members did not harm him. *Id.* at 156. A week

3

after this encounter, the gang members again detained Urquilla-Rodriguez and requested his assistance. *Id.* at 157. They also stole his phone, wallet, and personal documents, although they did not assault him. *Id.*

Following this encounter, Urquilla-Rodriguez moved to a different region, which was controlled by the MS-13 gang. *Id.* at 161–62. However, Urquilla-Rodriguez testified that the MS-13 gang members also requested that he assist them in acquiring weapons. *Id.* at 163–64. The gang members threatened him because they believed that Urquilla-Rodriguez had cooperated with the 18th Street gang. *Id.* at 162, 173. The gang members told Urquilla-Rodriquez that he would "suffer the consequences" if he did not collaborate with them. *Id.* at 163. Urquilla-Rodriguez encountered the MS-13 gang "almost every day." *Id.* The gang members did not physically harm Urquilla-Rodriguez. *Id.* at 164.

After approximately four months, Urquilla-Rodriguez moved back to the area controlled by the 18th Street gang. *Id.* After he returned, the gang members came to his house "almost every day" and again asked him to secure firearms for them and to provide them with training. *Id.* at 164–65. They also asked him to hide their weapons inside his house. *Id.* The gang members did not physically harm Urquilla-Rodriguez. *Id.* at 165. After two months, Urquilla-Rodriguez moved away from the area, and he and Rivera-Gonzalez began to make plans to travel to the United States. *Id.* When asked why he believed the gang members had targeted him, Urquilla-Rodriguez reiterated the reasons explained above. *Id.* at 173–74. He also testified that the gang members could have targeted him because they were envious of his family and the fact that they were employed and worked hard. *Id.* at 174.

4

During her testimony, Rivera-Gonzalez explained that she was very fearful of the war in El Salvador. *Id.* at 185. She also stated that the gangs "made a pack [sic] with the government that if they stopped attacking the civilians the government would help them in the jails and other ways wherever they were." *Id.* She explained that gang members would "often" come to their house and order her and her husband to collaborate with them; if she refused, they reminded her "how things happen here if you don't collaborate." *Id.* at 187. She later specified that around the time Urquilla-Rodriguez was robbed in January 2014, gang members came to her house two or three times and told her that if her husband did not collaborate, "something" would happen to her daughter. *Id.* at 188. She was never physically assaulted. *Id.* at 187–88. When asked why she believed her husband had been targeted, she stated that it was "because of where he works they knew where he worked and they thought he was going to be willing to help." *Id.* at 189–90.

C-V-U-R also testified at the hearing that she was scared to return to El Salvador because while she was there, gang members would come onto her school bus and remove students to ask them questions or assault them. *Id.* at 192. She explained that gang members grabbed her twice because they knew her mother owned a store and that her father was in the military. *Id.* at 193–94. They asked her questions about why her parents were not helping the gang members. *Id.* at 194. When she told them that she did not have any information, the gang members let her go. *Id.* Both Urquilla-Rodriguez and Rivera-Gonzalez stated that they were fearful that their children will be forced to join the gangs or will otherwise be in danger if they return to El Salvador. *Id.* at 174–75, 186.

On August 18, 2017, the IJ denied Petitioners' applications for asylum, withholding of removal, and CAT protection. AR 89 (IJ Order). Pertinent to this appeal, the IJ first determined that Petitioners had not established past persecution because they were never physically harmed and the threats were not pervasive or sufficiently serious. *Id.* at 85. Second, the IJ concluded that Petitioners had not shown that the Salvadoran government was unable or unwilling to protect them. *Id.* at 85–86. Third, the IJ explained that Petitioners had not shown that the gang members' actions were related to Petitioners' political opinion, since Petitioners' general refusal to assist the gang is not a recognized political opinion and Petitioners had not presented any evidence suggesting that the government or the gangs had approached Petitioners because they believed that Urquilla-Rodriguez disliked the current government. *Id.* at 86–87. Rather, the IJ concluded that Petitioners' testimony indicated "that they would be harmed for refusal to cooperate with the gangs, to pay them extortion money, to give them weapons or training or to hide their weapons." *Id.* at 87. The IJ also determined that Petitioners had not established that they had been targeted due to membership in any other social group because resistance to gang activity and Petitioners' perceived wealth are not particularized social groups. *Id.* Having determined that Petitioners could not establish an asylum claim, the IJ also denied their applications for withholding of removal, which involves a higher standard of proof. *Id.* The IJ subsequently denied Petitioners' applications for CAT protection as well. *Id.*

Petitioners appealed to the BIA. AR 16–32 (BIA Appeal). Petitioners contended that because Urquilla-Rodriguez had fought against the current government when he was in the military, and the government now negotiates with gang members, the gang members could have

targeted him because they believed he opposed them and their cooperation with the government. *Id.* at 29. Petitioners also argued that, because of the agreement between the government, the police, and the gang members, they had shown that the Salvadoran government was unwilling or unable to protect them. *Id.* at 30. They did not make any argument relating to the IJ's dismissal of their claim for CAT protections or withholding of removal. The BIA affirmed the IJ's determination, noting that because Petitioners had not challenged the dismissal of their CAT petition or their claim for withholding of removal, those claims had been waived. AR 3 n.2 (BIA Decision). The BIA largely agreed with the IJ's reasoning and findings of fact and further explained that the government was not unable or unwilling to protect Petitioners because when Urquilla-Rodriguez reported the robbery to police, they investigated and imprisoned one of the perpetrators. *Id.* at 5. The Petitioners filed this timely appeal.

## II. STANDARD OF REVIEW

When the BIA expressly adopts and affirms an IJ's decision while adding its own comments, we review both the BIA's and IJ's decisions. *Camara v. Holder*, 705 F.3d 219, 223 (6th Cir. 2013). "We review de novo questions of law and give 'substantial deference . . . to the BIA's interpretation of the INA [Immigration and Nationality Act] and accompanying regulations.'" *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). On the facts, meanwhile, we review whether the IJ's and BIA's factual findings are supported by substantial evidence. *See Khalili*, 557 F.3d at 435. "Moreover, Congress has specified that 'the administrative findings of fact are conclusive unless

any reasonable adjudicator would be compelled to conclude to the contrary.'" *Umaña-Ramos*, 724 F.3d at 670 (quoting 8 U.S.C. § 1252(b)(4)(B)).

### III. ANALYSIS

A person may be granted asylum if that individual is a "refugee," as defined by 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1). In turn, to qualify as a "refugee," a person must be "unable or unwilling to return to, and . . . unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account *of* race, religion, nationality, membership in a particular social group, or political opinion . . . ." *Id.* at § 1101(a)(42)(A). If a person did not suffer past persecution, the petitioner may still show she has a well-founded fear of future persecution by establishing "that she has a genuine fear and that a reasonable person in her circumstances would fear persecution on account of a statutorily-protected ground if she returned to her native country." *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011).

In their petition for review, Petitioners assert that the IJ and BIA erred when they determined that the threats Petitioners suffered were not sufficiently severe or pervasive to constitute past persecution. Pet'rs' Br. at 4. Petitioners also contend that the government was unable or unwilling to protect them because when Petitioners reported the threats to the police, the police did not pursue the matter and were in collaboration with the gangs. *Id.* at 5. What Petitioners do not contend, however, is that either the BIA or the IJ erred in determining that the harm Petitioners suffered was not based on membership in a protected group. *Id.* at 1–5. Indeed, Petitioners' brief does not mention the phrases "social group" or "political opinion" and Petitioners

did not file a reply brief addressing this issue. *Id.* This failure is dispositive, as any issue not raised in an initial brief is deemed waived. *Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 852 (6th Cir. 2007). As noted above, in order to establish their eligibility for asylum, Petitioners must show that their past persecution was due to "membership in a particular social group[ ] or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(B)(i). The IJ and BIA both concluded that the Petitioners had not established that they were persecuted due to their political opinion or their membership in any particularized social group; Petitioners do not challenge those determinations. Thus, we deny Petitioners' petition for review.

Moreover, even if Petitioners had asserted on appeal that they had been persecuted due to their political opinions or membership in an identifiable group, their petition still fails on the merits. On a liberal reading of their briefing and the hearing transcript, Petitioners raised four arguments as to why they believed they had been targeted in El Salvador. None compel us to reverse the BIA's determination. First, during the hearing, Urquilla-Rodriguez explained that he had been a member of the military in the 1980s and that the gang members had requested that he provide them with training related to either his military history or his employment in a security company. AR 153–55, 173 (8/16/2017 Immigration Ct. Tr.). Rivera-Gonzalez later explained that the government currently in power in El Salvador is the same party that Urquilla-Rodriguez fought against in the 1980s. *Id.* at 185. In their appeal to the BIA, Petitioners contended that Urquilla-Rodriguez's military status showed that they were targeted due to their political beliefs, since the group that Urquilla-Rodriguez fought against in the 1980s was now in control of El Salvador and had created alliances with gang members. AR 29 (BIA Appeal). However, as the IJ and BIA both

noted, Petitioners have not pointed to any evidence suggesting that the gang members targeted Urquilla-Rodriguez because of his opposition to the government in the 1980s. AR 87 (IJ Order); AR 5 n.4 (BIA Decision). Rather, the gang members appeared to be interested in his military training generally, not his involvement in a particular military dispute. *See* AR 153 (8/16/2017 Immigration Ct. Tr.) (explaining that "due to my military service they thought that I could give them some type of training"). Moreover, as the IJ explained, none of the threats Petitioners faced were related to Urquilla-Rodriguez's military service and, instead, they were clearly tied to Petitioners' refusal to assist the gang members. AR 87 (IJ Order); *see also* AR 163, 173, 187–88, 193–94 (8/16/2017 Immigration Ct. Tr.).

This leads us to Petitioners' second argument: that they were threatened and, in Urquilla-Rodriguez's case, robbed, due to their refusal to assist or join the gangs. While this claim is generally supported by the record evidence, it fails as a legal matter. As we have previously noted, a petitioner's proposed social group of individuals "'who ha[ve] been threatened because they refused to join the MS gang' is not cognizable under the INA." *Umana-Ramos*, 724 F.3d at 673. Petitioners' third argument relates to their belief that they may have been targeted because the gang members were envious that Petitioners were employed and worked hard. AR 174 (8/16/2017 Immigration Ct. Tr). This appears to be an iteration of the claim that Petitioners were targeted and threatened because they were perceived as wealthy. We have consistently rejected such arguments. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (collecting cases); *Diaz-Hernandez v. Holder*, 635 F. App'x 159, 161 (6th Cir. 2015) ("We have consistently held that those who are perceived as wealthy do not constitute a particular social group.").

10

Finally, C-V-U-R testified at the hearing that she was twice removed from her school bus by gang members who asked her why her parents were not assisting the gang. AR 193–94 (8/16/2017 Immigration Ct. Tr.). While family membership "is widely recognized by the caselaw" as a particular social group, *see Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009), as the IJ explained, Petitioners have not pointed to sufficient evidence indicating that C-V-U-R would actually be harmed based on her membership in this group, AR 87 (IJ Opinion). Indeed, C-V-U-R testified that after she told the gang members that she did not have any information regarding her parents, they let her go. AR 194 (8/16/2017 Immigration Ct. Tr.).

Consequently, even assuming that we may reach the merits of Petitioners' petition for review, substantial evidence supports the BIA's and IJ's determinations that Petitioners were not subjected to past persecution on account of their political opinions or membership in a particular social group. Petitioners therefore cannot establish past persecution or a well-founded fear of future persecution. *See Kante*, 634 F.3d at 325. And because Petitioners did not challenge the IJ's denial of their application for CAT protection or withholding of removal before the BIA, *see* AR 16–31 (Pet'rs' BIA Br.); AR 3 n.2 (BIA Decision), we lack jurisdiction to consider those claims, *see* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 559–60 (6th Cir. 2004).

## IV. CONCLUSION

For these reasons, we **DENY** the petition in part and **DISMISS** for lack of jurisdiction in part.