NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0534n.06

No. 19-3014

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EVA JUANA NOLASCO-MORALES; ALVYN WILDER NOLASCO-MORALES; KEVYN ROLFY MENDEZ-NOLASCO,

  Petitioners,

v.

WILLIAM P. BARR, Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

FILED
Oct 18, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

---

BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

 SUHRHEINRICH, Circuit Judge. Petitioner Eva Nolasco-Morales and her minor children,[1] natives and citizens of Guatemala, sought asylum and withholding of removal based upon harm she experienced on account of her membership in a "particular social group," which she identified as "unmarried Guatemalan women with children not living with the father of the children," or "Guatemalan women unable to leave a relationship." The Board of Immigration Appeals (BIA) held that the proposed social groups were not cognizable under 8 U.S.C. §1101(a)(42)(A) and dismissed the appeal. She seeks review.

 *Facts.* Nolasco-Morales and her children entered the United States illegally on April 20, 2015 and were placed in removal proceedings by the Department of Homeland Security (DHS). Nolasco-Morales admitted the factual allegations in her Notice to Appear and conceded

---

[1] Nolasco-Morales's children are derivative beneficiaries of her asylum application.

removability. Nolasco-Morales applied for asylum, withholding of removal under the Immigration and Nationality Act (INA), and protection under the Convention Against Torture (CAT). As revealed by her testimony before an immigration judge (IJ), Nolasco-Morales is indigenous. She was raised by her mother after her father abandoned her family. She has two children with a man named Rolfy. She lived with Rolfy and his family. Rolfy's father was abusive towards her. He hit her once in the face and once threatened to kill her. Rolfy's father was also abusive to Rolfy, which eventually caused Rolfy to abandon Nolasco-Morales and their children. Nolasco-Morales testified that she did not know why her father-in-law disliked her. Rolfy's cousin also threatened her because he thought Nolasco-Morales used witchcraft to make the cousin's brother sick.

Nolasco-Morales returned to her mother's house about two years after Rolfy disappeared. Two years after that she left for the United States. During the time she stayed with her mother, she had no contact with Rolfy's family, although she was told by neighbors that Rolfy's father and cousin still had plans to kill her.

*Procedural History.* At the time Nolasco-Morales filed her application, the BIA recognized that "married women in Guatemala who are unable to leave their relationship" constituted a "particular social group." *See Matter of A-R-C-G-*, 26 I. & N. Dec. 388, 390 (B.I.A. 2014). As noted, Nolasco-Morales sought asylum and withholding of removal based upon similar group definitions— "unmarried Guatemalan women with children not living with the father of the children," and "Guatemalan women unable to leave a relationship."

Although the IJ credited Nolasco-Morales's testimony, she denied the applications and ordered the Petitioners removed to Guatemala. The IJ found that the group "unmarried Guatemalan women with children not living with the father of the children" lacked the particularity

and social distinction to qualify as a particular social group under the INA. The IJ accepted the cognizability of "Guatemalan women unable to leave a relationship," based on *Matter of A-R-C-G-* but found that Nolasco-Morales was not a member of that group because her father-in-law had asked her to leave and she had returned to her mother's house. The IJ also found that Nolasco-Morales had not experienced past persecution and had not established a well-founded fear of future persecution on account of a protected ground. Because she was not eligible for asylum, the IJ denied her application for withholding of removal, and also denied the application for CAT protection on other grounds.

While Nolasco-Morales's appeal to the BIA was pending the Attorney General overruled *Matter of A-R-C-G-* as "wrongly decided," commenting that it "should not have been issued as a precedential decision," *Matter of A-B-*, 27 I. & N. Dec. 316, 316, 333 (A.G. 2018), because it "assumed its conclusion and did not perform the necessary legal and factual analysis" when it accepted multiple stipulations by the DHS, including that an alien was a member of "a particular social group," *id*. at 319.[2] In *Matter of A-B-*, the Attorney General concluded that the group "married women in Guatemala who are unable to leave their relationship" did not qualify as a particular social group because the group was circularly defined by the harm experienced and too diffuse to have the required particularity, and because there was no proof that Guatemalan society recognized such a group. *Id*. at 334–36.

---

[2] The BIA in *Matter of A-R-C-G-* accepted DHS's concessions that the petitioner "suffered harm rising to the level of past persecution, that she was a member of a qualifying particular social group, and that her membership in that group was a central reason for her persecution." *Matter of A-B-*, 27 I. & N. Dec. at 319 (citing *Matter of A-R-C-G-*, 26 I. & N. Dec. at 395); *see also id.* at 331.

In her appeal to the BIA, Nolasco-Morales presented the same purported particular social groups she raised to the IJ. She asserted that "[t]he recent decision of *Matter of A-B-* . . . did not alter [the] analytical framework" used by the BIA for determining whether a particular social group qualified for asylum and claimed that she made the required showing. The BIA found that the group "Guatemalan women who cannot leave a relationship" was virtually indistinguishable from the group rejected in *Matter of A-B-*, and that the group of "Guatemalan women with children living apart from the father of the children" lacked particularity and social distinction within Guatemalan society. These conclusions were fatal to Nolasco-Morales's withholding–of–removal claim. The BIA also denied Nolasco-Morales's CAT claim. Nolasco-Morales filed this petition for review.

*Analysis.* An applicant for asylum must establish that she is a "refugee" within the meaning of 8 U.S.C. §1101(a)(42)(A). 8 U.S.C. §1158 (b)(1)(A). Nolasco-Morales attempted to establish that she is a "refugee" because she fears to return to Guatemala due to persecution "on account of . . . membership in a particular social group." 8 U.S.C. §1101(a)(42)(A); 8 C.F.R. §1208.13(b). The statute does not define "particular social group," but the BIA and this court have interpreted the term as requiring that the proposed particular social group (1) shares a common, immutable characteristic, (2) is defined with particularity, and (3) is perceived as a group by society. *Torres v. Sessions*, 728 F. App'x 584, 586 (6th Cir. 2018); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). The group cannot be circularly defined by the harm suffered. *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011). The applicant must also demonstrate that her membership in that group is a central reason for her persecution. 8 U.S.C. §1158(b)(1)(B)(i).

Nolasco-Morales asserts a particular social group for the first time on appeal: "unmarried *indigenous* Guatemalan women with children not living with the father of their children." Because she did not present this argument to the agency, we lack jurisdiction to review the issue. 8 U.S.C. §1252(d)(1); *Chiroy-Melchor v. Barr*, 763 F. App'x 463, 466 (6th Cir. 2019) (per curiam); *Ramani v. Ashcroft*, 378 F.3d 554, 559–60 (6th Cir. 2004). Nolasco-Morales tries to explain away this error by claiming that the context of her testimony and pleadings "leaves no doubt" that she intended to petition as an indigenous woman, as further reflected by her original I-589 filing where she checked the box indicating "race" as one of the grounds for asylum. But Nolasco-Morales did not raise race as a separate claim. She must make that claim to the agency first. *Gor v. Holder*, 607 F.3d 180, 185 (6th Cir. 2010).[3]

Nolasco-Morales asked the agency to recognize "Guatemalan women unable to leave a relationship." The BIA found that this group failed for the reasons set forth in *Matter of A-B-*. However, Nolasco-Morales does not present any argument on appeal regarding that ruling and has therefore forfeited it. *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

Because Nolasco-Morales does not address either of the two proposed social groups she presented to the IJ and BIA, she has not shown that the BIA erred in refusing to grant her claims for asylum and withholding of removal. *See Torres*, 728 F. App'x at 586 (withholding of removal

---

[3] Nolasco-Morales argues that the BIA relied on *Matter of A-B-* to categorically reject her proposed social group of "unmarried Guatemalan women with children not living with the father of their children" because it was related to domestic violence. Contrary to her assertion, the BIA did not reject this proposed social group merely for being domestic-violence related. Rather, the BIA explained that Nolasco-Morales had failed to show that this proposed group was particular or socially distinct. Nolasco-Morales does not address this reasoning on appeal. Instead, she pivots and focuses primarily on her status as an indigenous Mayan woman, a social group that she did not raise before the IJ or the BIA.

claim necessarily fails if asylum claim fails because it requires a more stringent showing). Nolasco-Morales has also forfeited her CAT claim in this court by failing to address it.

*Conclusion.* For these reasons, we **DENY** the petition for review.